Omer J. Houle *vs.* Joseph Guilbeault.

NOVEMBER 27, 1944.

Present: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

Capotosto, J. This action of the case is brought by the plaintiff, a second mortgagee, to recover damages for the severance of the heating system from the buildings on the mortgaged premises and the sale thereof by the mortgagors to the defendant. The case was heard by a justice of the

superior court, sitting without a jury. At the conclusion of the plaintiff's case, the defendant moved for a nonsuit, which motion was granted. The case is before us on plaintiff's exception to this ruling.

The evidence, in so far as material, shows that Leroy B. Quigley and his wife, Margaret M. Quigley, were the owners of the premises in question. On August 20, 1941, they gave a first mortgage in the sum of $7000 to the First National Bank of Smithfield. On March 11, 1942, they gave a second mortgage for $3000 to the plaintiff. Both mortgages, which were duly recorded, are in the form commonly used in this state. It further appears in evidence that the defendant agreed to buy the fixtures in question before they were severed from the realty by the mortgagors in possession; that he received a writing from Leroy B. Quigley to the effect that the sale was a good sale; and that the fixtures, which later were delivered to him, were paid for by him to Quigley partly in cash and partly by canceling a debt of the mortgagors to him.

No decision of this court covers the precise question raised in this case and but few pertinent authorities from other jurisdictions have come to our attention. We have examined these authorities and find that they are based either on the lien theory rather than on the title theory of mortgages, the latter of which theories has been adopted in this state, or else the title theory is modified by equitable considerations in favor of a second mortgagee.

Cases like *Langdon* v. *Paul*, 22 Vt. 205 and *Mosher* v. *Vehue*, 77 Me. 169, which the plaintiff cites, are clearly inapplicable because of material factual differences from the case at bar. He lays great stress, however, on *Cedar Ave. Bldg. & Loan Assn* v. *McLaughlin*, 69 Pa. Sup. Ct. 73, and *Gooding* v. *Shea*, 103 Mass. 360. In the *McLaughlin* case a second mortgagee was allowed to recover apparently on the lien theory of mortgages; and according to the *Gooding* case it appears to us that in Massachusetts an action at law by a first mortgagee for the wrongful removal of fixtures

is supported on legal grounds and that such an action by a second mortgagee is supported on equitable principles.

The only other case of some pertinence that has come to our attention is *Sanders* v. *Reed,* 12 N. H. 558. That case, which more closely reflects the title theory of mortgages as understood in this state, holds that if there are two mortgages upon land, neither of the mortgagees having entered, and the mortgagor, without the assent of either of them, wrongfully cuts timber upon the land, the second mortgagee may maintain an action of trespass for the cutting of the timber *after* the first mortgage is discharged. The court there said, at page 562, "it may be supposed to be a good defence to an action by the second mortgagee, that the first mortgage still existed, unless it could be shown that the first mortgagee assented, and therefore had no right of action."

Considering the conflicting theories in reference to the extent of the interest that a first mortgagee acquires in the land, the specific question now before us is to be determined by our own law, keeping in mind that in this case we are dealing with an action at law by a second mortgagee for the wrongful removal of fixtures. In this state a first mortgage is a conveyance to such mortgagee of the legal fee in the land, defeasible upon condition that the mortgagor will perform the condition of the mortgage. Under this theory of the nature of a first mortgage, which has remained unquestioned over the years, the mortgagor is not seised of the legal fee in the land until he performs the condition, although, generally speaking and as between him and persons other than a mortgagee, he is still regarded as the owner of the land for many purposes, which we need not mention here.

This view of the effect of a first mortgage as between mortgagor and first mortgagee is the basis for the decision of this court in *Waterman* v. *Matteson,* 4 R. I. 539, where a first mortgagee was allowed to maintain an action of replevin against a mortgagor in possession for wood and

timber cut upon the mortgaged estate in waste of the same. The court therein says, at page 545, that "waste is equally a violation of the rights of the mortgagee under the mortgage, at law, as in equity, and is regarded as a wrong in a court of law, with all the legal consequences attached to an act of that character."

The case of *Simmons* v. *Brown,* 7 R. I. 427, clearly shows that in this state we are committed to the title theory of mortgages. There the facts were as follows: In June 1857 the defendant gave a first mortgage on certain land and remained in possession thereof. In December 1859 defendant's interest in the mortgaged premises was sold under an execution and such interest was later conveyed by the purchaser at the execution sale to the plaintiff, who, in February 1862, brought ejectment against the defendant. On March 31, 1862 the mortgagee entered upon the mortgaged premises and, on the following day, leased them to the defendant, who thereafter continued in actual possession of the same.

On these facts, at page 428, the court says: "The defendant, as mortgagor in possession, was, when the execution against him was levied upon the mortgaged estate, but a tenant at sufferance to his mortgagee, with the right, it is true, to protect his possession by redeeming the mortgage. The sale of his interest upon execution imposed no obligation upon him to redeem the mortgage for the benefit of the purchaser at the sheriff's sale, nor created any such relation between them as disentitled him to acknowledge the superior title of his mortgagee, which he had granted, and to accept a lease from him to protect his possession against the adverse claim of the purchaser. On the other hand, the mortgagee was entitled to possession both against the mortgagor and those claiming under him, or adversely to him, by law, under his title." And, at page 429, the court ends the opinion by saying that "the remedy of the plaintiff would have been to redeem the mortgage to which

his title by execution was subject; and this is now equally open to him."

Where the legal title passes from a mortgagor to a first mortgagee, a second mortgage is, in substance, a mortgage merely of the mortgagor's equity of redemption. In the absence of agreement to the contrary, the ownership of fixtures is one of the incidents of title to the estate. They belong to him who has the fee and he alone has the right to sever them from the land. If wrongfully severed by another, he can reclaim the fixtures or recover damages for their loss in a proper action at law. Although the severance changes the legal character of the fixtures from realty to personalty, it does not change their ownership. Applying these well-established principles of real property and confining ourselves to the circumstances in the instant case, we fail to see, unless we resort to equitable considerations, any legal ground that would warrant a second mortgagee, who acts without the consent of the first mortgagee, to maintain an action at law to recover damages for the wrongful severance of fixtures to which he had no legal title.

On such view there is no force in the argument that unless a second mortgagee is allowed to maintain an action at law in the circumstances of this case the security of the second mortgage might be seriously impaired. Such argument completely disregards the legal rights of the holder of a first mortgage and gives no consideration to the effect that a wrongful severance of fixtures might have upon that mortgage, which vests in the holder thereof the legal title. Furthermore, the hardship to which a second mortgagee might possibly be exposed by strict adherence to legal principles on the facts now before us is more apparent than real. A first mortgagee would be bound to apply, in diminution of that mortgage, any sum recovered by him for the wrongful severance of fixtures and to such extent, at least, the second mortgagee would suffer no real loss.

While the view herein expressed may well be contrary to the apparent tendency in some states, where a second mort-

gagee in substance is allowed to recover in an action at law for the wrongful removal of fixtures, nevertheless, having in mind our own doctrine of mortgages which heretofore has been accepted for many years without question by all concerned in such a transaction, we are not disposed to override the plain rules of law in the determination of the specific question now before us. We are, therefore, of the opinion that there was no error in granting the nonsuit in the circumstances of the instant case.

We find no merit in the plaintiff's further contention that the trial justice granted defendant's motion for a nonsuit on a ground other than the one specified by the defendant in his motion. An examination of the record shows that, irrespective of any reasons advanced by defendant's counsel or by the court, the only ground urged by the defendant in support of his motion was that, under the law of this state, the plaintiff had no right of action in the circumstances of the instant case. In our opinion, the question thus presented was correctly decided by the trial justice, though a different reason was assigned by him.

The plaintiff's exception is overruled, and the case is remitted to the superior court for the entry of judgment for the defendant on the nonsuit.

*Irving I. Zimmerman,* for plaintiff.
*James E. L. Smith,* for defendant.