(No. 57116.—

THE DEPARTMENT OF TRANSPORTATION, Appellant, v. NEW CENTURY ENGINEERING AND DEVELOPMENT CORPORATION *et al.*, Appellees.

*Opinion filed September 23, 1983.*

Tyrone C. Fahner, Attorney General, of Springfield (Wayne R. Johnson, Thomas R. Wilson, Raymond E. Meader, Frank S. Righeimer, Jr., Leo N. Cinquino, and Jeanne T. Goshgarian, Special Assistant Attorneys General, of counsel), for appellant.

Arnstein, Gluck & Lehr, of Chicago (John F. McClure, Arthur L. Klein, Morton M. Steinberg, and Adele Rapport, of counsel), for appellee James Talcott, Inc.

CHIEF JUSTICE RYAN delivered the opinion of the court:

In this condemnation proceeding, the Department of Transportation of this State, in July 1973, initiated "quick-take" proceedings (Ill. Rev. Stat. 1971, ch. 47, par. 2.1) in the circuit court of Will County to immediately acquire title to a 7.55-acre tract of land to be used for road improvements. The tract was owned by the defendant, New Century Engineering and Development Corporation. James Talcott, Inc., was joined as a defendant as a mortgagee of the property. Following a hearing,

the court fixed the sum of $325,000 as preliminary just compensation. (Ill. Rev. Stat. 1971, ch. 47, par. 2.2.) Under the then requirements of section 2.3 of the Eminent Domain Act (Ill. Rev. Stat. 1971, ch. 47, par. 2.3), the Department deposited 125% of the preliminary compensation award with the county treasurer of Will County. Following the deposit, pursuant to the provisions of section 2.3 of the Act, the court, on September 18, 1973, entered an order vesting title to the tract in the petitioner.

On the same day, the defendants filed a joint petition requesting that an order be entered authorizing defendant New Century (owner) to withdraw $137,500 of the amount deposited and Talcott (mortgagee) to withdraw $187,500. The court entered an order authorizing the withdrawals by the defendants as prayed.

The unduly long delay in having a final determination of just compensation is not explained in the record. It was not until nearly eight years later that a jury fixed the just compensation for the tract taken at $171,535. This amount was $153,465 less than the amount fixed as preliminary just compensation by the court and withdrawn by the defendants. On June 25, 1981, the Department filed a petition in the circuit court of Will County asking the court to hold the two defendants jointly and severally liable for the refund of $137,500 (the amount withdrawn by New Century) and Talcott separately liable for $15,965 (the amount by which Talcott's withdrawal exceeded the total award of the jury). The Department also prayed for interest on the amount that the withdrawals exceeded the award. The circuit court held the defendants jointly and severally liable for the amount of $137,500; it held Talcott individually liable for $15,965, but denied the prayer for interest.

The appellate court reversed that part of the circuit court's judgment holding New Century and Talcott

jointly and severally liable for $137,500. It affirmed the several liability of Talcott for $15,965. It also affirmed the denial of interest. (106 Ill. App. 3d 1098.) We allowed the Department's petition for leave to appeal. 87 Ill. 2d R. 315.

Since this action was commenced, the Eminent Domain Act has been incorporated in the new Code of Civil Procedure. References herein to sections of the Act will refer to the current statutory citations in the Code of Civil Procedure.

The basic contention of the Department in the trial court, and in the appellate court, was that, under the various sections of the Act, joint and several liability is imposed upon the parties who participate in the withdrawal of the money deposited for the repayment of the amount that the withdrawals exceed the final award. This is also the basic contention in this court. However, the Department now argues several issues not raised in the trial court or in the appellate court, to which we will refer later. In a sense, these issues are ancillary to the Department's basic contention.

The relevant sections of the Code of Civil Procedure are sections 7—106, 7—109 and 7—123(b) (Ill. Rev. Stat. 1981, ch. 110, pars. 7—106, 7—109, 7—123(b)). Section 7—106 is captioned "Withdrawal by persons having an interest." The relevant part of this section is as follows:

"Withdrawal by persons having an interest. At any time after the plaintiff has taken possession of the property pursuant to the order of taking, *** any party interested in the property may apply to the court for authority to withdraw for his or her own use his or her share (or any part thereof) of the amount preliminarily found by the court to be just compensation ***. After the hearing, the court may authorize the withdrawal requested, or such part thereof as is proper, but upon the condition that the party making such withdrawal shall refund to the clerk of the court, upon the entry of a proper court order, any portion of the amount so withdrawn which ex-

ceeds the amount finally ascertained in the proceeding to be just compensation \*\*\* owing to such party." (Ill. Rev. Stat. 1981, ch. 110, par. 7—106.)

Section 7—109 is captioned "Refund of excess of deposit." The relevant part of that section provides:

> "Refund of excess of deposit. If the amount withdrawn from deposit by any interested party under the provision of Section 7—106 of this Act exceeds the amount finally adjudged to be just compensation \*\*\* due to such party, the court shall order such party to refund such excess to the clerk of the court, and if refund is not made within a reasonable time fixed by the court, shall enter judgment for such excess in favor of the plaintiff and against such party." (Ill. Rev. Stat. 1981, ch. 110, par. 7—109.)

The appellate court construed these two sections as creating individual or several liability for the refund upon the party making the withdrawal. The court held that, under these sections, Talcott was not liable for the amount withdrawn by New Century, but was responsible for the refund of the amount by which Talcott's withdrawal ($187,500) exceeded the final award ($171,535), which is $15,965. We find that this construction of these sections of the statute is correct. Section 7—106 speaks of an interested party withdrawing "his or her share" and provides that the withdrawal shall be upon the condition that the *party making such withdrawal* shall refund to the clerk any portion of the amount so withdrawn which exceeds the amount finally ascertained to be just compensation *owing such party*. Again, section 7—109 states that if the amount withdrawn by *any interested party* exceeds the amount finally adjudged to be just compensation due to *such party* the court shall order *such party to refund such excess* to the clerk. That section further provides for the entry of judgment for *such excess* against *such party*.

These sections, although recognizing that multiple parties may be interested in the award and may make with-

drawals, clearly speak in terms of individual responsibility for refunds and tie the liability for the refund to the amount by which the individual party's withdrawal exceeds his or her share of the final award of compensation. It would be a strained construction to hold that these sections make all parties who participate in a withdrawal liable for the total amount by which the total withdrawals exceed the final amount of compensation.

The Department contends that the appellate court did not consider the provisions of section 7—123(b) of the Act. The relevant part of that section provides:

"(b) In case the plaintiff is in possession pursuant to an order entered under the provisions of Section 7—105 of this Act *** the court *** shall enter an order setting forth the amount of just compensation so finally ascertained and ordering and directing the payment of any amount thereof that may remain due to any of the interested parties, directing the return of any excess in the deposit remaining with the clerk of the court, and directing the refund of any excess amount withdrawn from the deposit by any of the *interested parties,* as the case may be." (Emphasis added.) (Ill. Rev. Stat. 1981, ch. 110, par. 7—123(b).)

The Department seems to contend that the use of the term "interested parties" in the last part of the section just quoted requires that the word "party" in sections 7—106 and 7—109 be read as "parties." However, a simple reading of the last part of section 7—123(b) reveals that that section also provides that the order directing the refund be only of the excess amount withdrawn by *any of* the interested parties. To give this section the construction for which the Department contends, the words "any of" would have to be omitted so that the section would provide for an order directing the refund "of any excess amount withdrawn from the deposit by the interested parties."

The language of these three sections of the Act is clearly singular and imposes several liability for refund on the party making the withdrawal only for the excess

amount of his or her own withdrawal. Had the legislature intended to impose joint and several liability and make each party participating in the withdrawal responsible for the total excess withdrawal, it could have easily so provided. The language used in these sections does not so provide.

Because Talcott is the mortgagee and ultimately foreclosed on the remaining mortgaged property, the Department's argument has surface appeal. However, the construction urged by the Department would be applicable to all interests in property involved in a "quick-take" condemnation. It would be far from the intent of the legislature to construe these sections as requiring, for instance, that the owner of an undivided one-fifth interest in property taken reimburse the State for the excess withdrawn by the owners of the other four-fifths interest.

The Department makes several arguments based on the premise that Talcott, by virtue of a foreclosure after the "quick-take" proceedings and before the final award, became the "owner" of the property. It is argued that Talcott therefore took the property subject to the obligation of New Century to refund the excess withdrawn. Any argument based on the assumption that Talcott became the owner of the property taken misconceives the nature of a "quick-take" proceeding. Section 7—105(a) (Ill. Rev. Stat. 1981, ch. 110, par. 7—105(a)) provides that, after the determination of preliminary compensation, if the plaintiff deposits with the county treasurer money in the amount of the award, the court shall enter an order *vesting in the plaintiff* fee simple title (or such other interest required) to the property. (The 1971 statute (Ill. Rev. Stat. 1971, ch. 47, par. 2.3) provided for the deposit of 125% of the amount found as preliminary compensation.) Thus, before any withdrawal of funds was made in this case, title to the property taken vested in the Department. Talcott never had title to the condemned property and could not by foreclosure

or otherwise acquire from New Century title to the property for which compensation was awarded. New Century was divested of ownership of the property by virtue of the court order entered prior to the withdrawal of the money deposited.

The award in a condemnation proceeding stands in the place of the land taken. Prior to the condemnation, the mortgage constituted a lien on the land taken and on the other land covered by the mortgage. Neither the mortgagor nor the mortgagee has the power to prevent the taking by the State. The property involved in the condemnation was taken from the owner, and title vested in the State free and clear of the lien of the mortgage. However, the mortgagee, although losing his mortgage lien upon the condemned property, under the law of this State, had an equitable lien upon the award for the land that was taken in the condemnation proceeding, as well as a mortgage lien upon the remainder of the land as security for his debt. By foreclosing the mortgage, the mortgagee, as the purchaser at the foreclosure sale, can acquire title to the mortgaged property not involved in a condemnation proceeding. He cannot acquire title to the land that was taken. The award stands in place of and as a substitute for the land that was taken and can be applied to satisfy the debt. If there has been a foreclosure of the mortgage on the remaining property, as in this case, to the extent that the debt has not been satisfied in the foreclosure proceeding, the award can be applied against the debt. See *City of Chicago v. Salinger* (1943), 384 Ill. 515.

The Department argues that the order of the trial court which authorized the withdrawal imposed a joint and several obligation upon New Century and Talcott to refund the excess amount withdrawn. The order was entered pursuant to section 7—106 of the statute, which has been quoted above. That section provides that the court may enter an order authorizing the withdrawal of the money de-

posited upon the condition that the party making the withdrawal shall refund any portion of the amount withdrawn which exceeds the amount finally determined to be owing such party. The language of the order closely follows the language of the statute. The order in this case provides for a withdrawal by New Century and a withdrawal by Talcott and states in its last paragraph:

"[A]ll of said *withdrawals* to be upon the condition that said defendants shall refund to the Treasurer of Will County upon the entry of a proper court order any portion of the amount so withdrawn which shall exceed the amounts finally ascertained in the proceedings to be just compensation *** owing to defendants." (Emphasis added.)

The Department, in its petition for leave to appeal, erroneously refers to the order as providing for a single withdrawal and even erroneously quotes the order as providing that "all of said *withdrawal*" is conditioned upon the obligation to refund. (Compare with the italicized language in the order above.) The order does not provide for a single withdrawal with a joint obligation to refund. The order provides for separate withdrawals by each defendant. There is nothing in the order to indicate any intention on the part of the court or the parties to impose upon the defendants obligations to refund broader than those contained in the statute. The order is acknowledged by the Department in its petition for leave to appeal to have been entered pursuant to section 7—106.

Talcott argues that it is not liable for any refund, as the compensation it received was less than the amount of its mortgage interest in the subject property. In the alternative, Talcott argues that it is only liable for the refund of $15,965, based upon the difference between the award of final just compensation of $171,535 and the amount of $187,550 that it received pursuant to the order of withdrawal. We agree with the appellate court that Talcott is liable for the refund of $15,965. The obligation under the

statute is to refund the excess of the amount withdrawn by the party over the amount finally determined as just compensation owing to that party. In this case Talcott's interest in the just compensation finally awarded can be no more than the total amount of that award, which was $171,535. Under the statute, Talcott is therefore obligated to refund the amount that it withdrew in excess of this final award.

The Department argues that it is entitled to receive, from Talcott, interest on the excess preliminary compensation withdrawn from the date of the withdrawal. The appellate court correctly held that interest is clearly a statutory creature in this State and was not recoverable unless contracted for or authorized by statute. (See *Lakefront Realty Corp. v. Lorenz* (1960), 19 Ill. 2d 415; *Blakeslee's Storage Warehouses, Inc. v. City of Chicago* (1938), 369 Ill. 480.) The Department cites *People ex rel. Director of Finance v. YWCA* (1979), 74 Ill. 2d 561, for the proposition that just compensation is not intended to improve the status of the condemnee. The *YWCA* case dealt with the proper measure of value to be used in determining just compensation and not with the question of interest to be paid to the condemnor. The general statement made in that case is therefore not helpful on the question of interest now under consideration.

The Department argues that the purpose of an eminent domain proceeding is to ensure that just compensation is paid for the property taken and that if interest is not payable to the State on the excess amount withdrawn, more than just compensation will have been paid. The Department cites cases from other jurisdictions in support of its position. This is obviously not the first case in which the amount of the preliminary compensation withdrawn exceeded the amount finally determined as just compensation. However, the Department cites no case from this State in which interest has been allowed to the condemnor

on the excess amount withdrawn. As noted above, this court has consistently held that the right to interest must be found in the contract between the parties or in the statute. If the condemnor in a quick-take proceeding is to be allowed interest upon excess funds withdrawn, this change in the law will have to be made by the legislature and not by the courts.

The Department asserts that interest is provided for by section 7—108 of the Act (Ill. Rev. Stat. 1981, ch. 110, par. 7—108). However, that section only provides for the payment of interest by the condemnor to the interested parties in certain situations. It provides that interest shall be paid on any amount by which the finally determined just compensation exceeds the amount preliminarily found by the court in the quick-take proceeding. There is no provision in this statute for the payment by the interested parties of interest on the excess amount withdrawn. The fact that interest is provided for in one instance and not the other is an indication that the legislature did not intend that interest be paid upon the excess withdrawn.

Finally, the Department contends that it is entitled to post-judgment interest upon any excess funds withdrawn from the date of the judgment by the trial court holding Talcott separately liable for the refund of $15,965 on June 25, 1981. Although the eminent domain law does not specifically provide for interest in this situation, section 3 of the Interest Act (Ill. Rev. Stat. 1979, ch. 74, par. 3) provided that "[j]udgments recovered before any court shall draw interest *** from the date of the judgment until satisfied ***." We therefore hold the Department is entitled to interest at the legal rate provided by statute upon the amount of $15,965 from June 25, 1981, the date of the judgment, until the date of payment.

For the above reasons, the judgments of the appellate and circuit courts, insofar as they hold Talcott liable only for the refund of $15,965 are affirmed, and insofar as they

deny the Department's right to interest on this amount from the date of the judgment of the trial court, the judgments are reversed. That portion of the appellate court judgment reversing the circuit court's imposition of joint and several liability is affirmed and the circuit court's judgment in that respect is reversed. The cause is remanded to the circuit court for entry of a judgment for interest in accordance with this opinion.

*Appellate court affirmed in part and reversed in part; circuit court affirmed in part and reversed in part; cause remanded, with directions.*