**In re Carmine J. D'ELLENA.**

**No. 93–499–M.P.**

Supreme Court of Rhode Island.

April 18, 1994.

Geoffrey Alan Regan, Kirshenbaum & Kirshenbaum, Cranston, Thomas Hemmendinger, Mark Sylvia, Salter, McGowan, Swartz & Holden, Providence, for plaintiff.

Peter J. Brockman, Law Offices of Stephen Shecthman, Providence, for defendant.

## OPINION

WEISBERGER, Acting Chief Justice.

This case comes before us pursuant to a question certified to this court by the judge of the United States Bankruptcy Court for the District of Rhode Island pursuant to Rule 6 of the Supreme Court Rules of Appellate Procedure, which authorizes this court to answer questions of law certified to it by any federal court, including the United States Bankruptcy Court. *See In re Shepard Co.,* 115 R.I. 290, 292–93, 342 A.2d 918, 921 (1975). The certified question is as follows:

"Is the mortgagee or the record owner of real estate entitled to the proceeds from a public taking of private property, where the mortgage deed and note are silent regarding the right, title, or ownership in and to such proceeds, and where there are no applicable statutes providing guidance as to the distribution of or entitlement to such funds?"

The relevant facts are not in dispute and are as follows. Carmine J. D'Ellena (D'Ellena) was the record owner of a certain parcel of land with improvements located at 720 Main Street in East Greenwich, Rhode Island (the property). In August 1989 D'Ellena executed a $600,000 promissory note in favor of Davisville Credit Union (Davisville). The note was secured by a first mortgage on the property.

In May 1991 the State of Rhode Island took by eminent domain a portion of the property for public-highway purposes. Condemnation proceeds from the property in the amount of $36,505 were deposited in the Registry of the Superior Court, where said funds remain to date.[1] The note and the mortgage held by Davisville were silent on the issue of whether Davisville's interest in the property extended to condemnation proceeds.

In 1992 D'Ellena apparently experienced severe financial difficulties that led to a default on his obligations to Davisville, as well as to his other creditors who were unsecured. In January 1993 D'Ellena filed an individual chapter 7 bankruptcy petition.

Around that same time Davisville was placed under receivership pursuant to G.L. 1956 (1989 Reenactment) chapter 15 of title 19 and many of its assets, including the note and mortgage from D'Ellena, were acquired by the Rhode Island Depositors Economic

---

1. Apparently because negotiations over the fair market value of the property failed, the state, in accordance with G.L.1956 (1990 Reenactment) § 37–6–28, deposited the condemnation proceeds with the Registry of the Superior Court.

Protection Corporation (DEPCO).[2] Because of D'Ellena's ongoing default under the note and mortgage, DEPCO sought to foreclose on the property. As a result of D'Ellena's bankruptcy filing, DEPCO was required to request relief from the automatic stay of the bankruptcy proceeding in order to foreclose. The Bankruptcy Court granted DEPCO relief from the automatic stay, and in September 1993 DEPCO sold the property at public auction for $292,500. This left an unsecured deficiency of approximately $400,000 due under the note, which sum could be wholly discharged in D'Ellena's bankruptcy proceeding.

At some point after acquiring D'Ellena's note and mortgage but before actually auctioning the property, DEPCO became aware of the existence of the condemnation proceeds held in Superior Court. Seeking to satisfy part of its anticipated unsecured deficiency, DEPCO immediately filed a second motion for relief from the automatic stay in order to pursue and obtain the condemnation proceeds. The trustee in bankruptcy (trustee) filed an objection to the motion on the ground that DEPCO did not hold a perfected security interest in the condemnation proceeds. The Bankruptcy Court thereafter held a hearing to determine whether DEPCO, as mortgagee, or the trustee, on behalf of the mortgagor, was entitled to the proceeds.

At the hearing the bankruptcy judge recognized that the determinative issue was purely a question of state law, in regard to which it appeared that there was no controlling precedent from the Rhode Island courts. Rather than decide the issue himself, the bankruptcy judge, with the consent of both parties, certified the question to this court for resolution.

The trustee urges us to decide the issue on the basis of principles of secured transactions. Under such principles, the trustee argues that absent specific language in the loan documents granting DEPCO a security interest in condemnation proceeds, such proceeds are an asset of the bankruptcy estate.

DEPCO counters the trustee's position by arguing that it seeks not a security interest under secured transaction principles but rather a lien under equitable principles. In order to recognize such a lien, DEPCO urges this court to adopt the majority rule in other jurisdictions, which holds that a mortgagee is equitably entitled to condemnation proceeds to the extent of its interest.

We begin our analysis by noting that we are provided no specific guidance in this particular case by the loan documents that govern the relations between the parties. Furthermore, unlike many other states, Rhode Island has no statute that speaks to the issue of whether a record owner or a mortgagee is entitled to condemnation proceeds. General Laws 1956 (1990 Reenactment) § 37–6–17, entitled "Payment of agreed price for condemned land," provides only that proceeds are to be paid to "any party [who] shall * * * agree with the acquiring authority upon the sum to be paid for the value of the land or other real property so taken and of appurtenant damage to any remainder or for the value of his or her estate, right, or interest therein." Clearly this statute begs the question rather than answers it.

■ We first briefly address the trustee's argument concerning G.L.1956 (1992 Reenactment) chapter 9 of title 6A, which governs secured transactions. Quite simply, chapter 9 of title 6A is inapplicable to interests in real property. Section 6A–9–104(j) provides in crystal-clear language that chapter 9 does not apply to "the creation or transfer of an interest in or lien on real estate." For this reason, the trustee's argument has no merit.

We next turn to DEPCO's position. The long-standing majority rule advocated by DEPCO is that when part of a mortgaged parcel of land is taken by eminent domain, the mortgagee is entitled, under equitable principles, to the proceeds thereof up to the amount of its interest in the property. *See Department of Transportation v. New Century Engineering and Development Corp.*, 97 Ill.2d 343, 350, 73 Ill.Dec. 538, 542, 454

---

**2.** Pursuant to G.L.1956 (1993 Reenactment) chapter 116 of title 42, the Rhode Island Depositors Economic Protection Corporation was created to purchase certain assets of faltering financial institutions in order to protect depositors and to pay institutional deposit liabilities.

N.E.2d 635, 639 (1983); *Bates v. Boston Elevated Ry. Co.,* 187 Mass. 328, 337, 72 N.E. 1017, 1020 (1905); *In re Dillman,* 276 Mich. 252, 257, 267 N.W. 623, 625 (1936); *Boutelle v. City of Minneapolis,* 59 Minn. 493, 497, 61 N.W. 554, 555 (1894); *Halfon v. Title Insurance and Trust Co.,* 97 Nev. 421, 424, 634 P.2d 660, 662 (1981); *Utter v. Richmond,* 112 N.Y. 610, 613, 20 N.E. 554, 556 (1889); *State v. Fitzgerald,* 154 Or. 182, 188–89, 58 P.2d 508, 510–11 (1936); *State v. Hemmingson,* 57 Wash.2d 635, 638, 359 P.2d 154, 155–56 (1961); *see also* George Osborne, *Handbook on the Law of Mortgages,* § 136 at 222–24 (2nd ed.1970); Annotation, *Rights of Mortgagee in Award in Eminent Domain Proceedings,* 154 A.L.R. 1110, 1110 (1945).

The theory underlying this rule is that the condemnation award equitably stands in the place of the land taken. *See Department of Transportation,* 97 Ill.2d at 350, 73 Ill.Dec. at 542, 454 N.E.2d at 639; *Calumet River Ry. Co. v. Brown,* 136 Ill. 322, 331–32, 26 N.E. 501, 502 (1891); *Boutelle,* 59 Minn. at 497, 61 N.W. at 555. Since the mortgage "does not cover the award in law, it is held to operate as an equitable lien thereon." *City of Chicago v. Salinger,* 384 Ill. 515, 520, 52 N.E.2d 184, 187 (1943); *see also Halfon,* 97 Nev. at 424, 634 P.2d at 662; *Utter,* 112 N.Y. at 613, 20 N.E. at 556; *Fitzgerald,* 154 Or. at 189, 58 P.2d at 511; *Hemmingson,* 57 Wash.2d. at 638, 359 P.2d at 156. Courts have consistently stressed that principles of justice, fairness, and equity warrant such a rule. *See, e.g., Utter,* 112 N.Y. at 613, 20 N.E. at 556 ("[n]o doctrine could be more clearly just"); *Bates,* 187 Mass. at 339, 72 N.E. at 1021. The Supreme Court of Michigan, addressing the inequity that would result absent such a rule, explained that

> "[t]his is no more than common justice to the mortgagee, who is entitled to the benefit of all the security he contracts for, and no more than common honesty by the mortgagor, who pledged the security and ought not to deprive the mortgagee of any part of it to his sole benefit until his obligation is paid." *In re Dillman,* 276 Mich. at 258–59, 267 N.W. at 626; *see also Calumet River Ry. Co.,* 136 Ill. at 332, 26 N.E. at 502 ("[t]here can be no injustice in this view, as the [mortgagor] receives the bene-

fit of the money when it is credited upon his debt").

■ We believe the rationale for the rule as set forth above is quite persuasive. Furthermore, when viewed in light of the fact that Rhode Island is a title-theory state, we think the equitable considerations are heightened. This is so because in Rhode Island, a mortgagee not only obtains a lien upon the real estate by virtue of the grant of the mortgage deed but also obtains legal title to the property subject to defeasance upon payment of the debt. *See Houle v. Guilbeault,* 70 R.I. 421, 423, 40 A.2d 438, 440 (1944); *Simmons v. Brown,* 7 R.I. 427, 428 (1863); *see also* G.L.1956 (1984 Reenactment) §§ 34–11–20 and 34–11–21. When the condemning authority deprives the mortgagee of his, her, or its legal title, a fortiori the mortgagee would be entitled to an equitable lien upon the condemnation proceeds. The distinction between the result if a mortgage is considered a lien, as opposed to being considered a transfer of legal title, is not significant in the context of condemnation. However, any distinction would favor the mortgagee as legal title holder. For example, this distinction would obviate the need of a statute or contractual language to protect the interest of a mortgagee as legal title holder in the event of condemnation.

■ In addition to the above rationale, we are also moved by constitutional considerations. The Federal and State Constitutions both prohibit the condemnation of property without just compensation. U.S. Const. Amend. V; R.I. Const. art. 1, sec. 16; *see also Atlantic Refining Co. v. Director of Public Works,* 104 R.I. 436, 438, 244 A.2d 853, 855 (1968) (when the power of eminent domain is exercised, the right of just compensation arises). Precondemnation, a mortgagee holds legal title to mortgaged property by virtue of its mortgage. Under our condemnation statute, once property is taken by eminent domain, title vests in the state free and clear of the mortgagee's title. Section 37–6–14. When the mortgagee loses its title to the condemned property or a part thereof, the mortgagee loses all or a portion of the security for which he, she, or it bargained.

The mortgagee is left with only the land not taken to satisfy the mortgagor's debt. Thus, for example if 80 percent of a mortgaged parcel is taken, only 20 percent would be left for the benefit of the mortgagee. Clearly, losing such a large portion of one's security, or indeed any portion of one's security, without offering in exchange some form of reasonable renumeration would amount to a taking without just compensation. Therefore, we conclude that a mortgagee's legal title to property pursuant to its mortgage is a property interest protected by the Federal and State Constitutions.

For the reasons stated, we align ourselves with the majority of jurisdictions holding that when part of a mortgaged property is taken for public use, an equitable lien attaches to the condemnation proceeds in favor of a mortgagee to the extent of its interest. This means that in a case in which a mortgagee has foreclosed upon its mortgage on the remaining mortgaged property not condemned, the mortgagee is entitled to the condemnation proceeds to the full amount of any deficiency that exists after foreclosure.

Therefore, we answer the certified question in favor of the mortgagee. The papers in this case may be remanded to the United States Bankruptcy Court for the District of Rhode Island for further proceedings.