## 140 RESERVOIR AVENUE ASSOCIATES

v.

## SEPE INVESTMENTS, LLC et al.

v.

### City of Providence.

### No. 2006–256–Appeal.

Supreme Court of Rhode Island.

Dec. 21, 2007.

---

**4.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Justin T. Shay, Esq., for Sepe Investments/Slade's Ferry Trust.

Albert R. Romano, Esq., Providence, for City of Providence.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice SUTTELL, for the Court.

The City of Providence (city), appeals from a Superior Court judgment ordering that a writ of mandamus be issued in a proceeding to foreclose the right of redemption to property purchased by 140 Reservoir Avenue Associates (140 Reservoir Avenue) at a tax sale. The writ directed the city treasurer to refund to 140 Reservoir Avenue $81,740.99, the amount the latter had paid for the property at the tax sale. For the reasons set forth in this opinion, we vacate the judgment and quash the writ of mandamus.

## I

### Facts and Procedural History

This appeal hinges upon the validity of a tax sale and the rights of the parties interested therein. The property at issue is at 120 Wayland Avenue, Providence (the property). On April 1, 2003, Arnold Kilberg executed a quitclaim deed conveying his interest in the property to his wife, Joan Kilberg, without consideration. The deed was recorded on April 4, 2003. At the time of the conveyance, the property was encumbered by a first mortgage held by Lincoln Trust Company (Lincoln Trust). For reasons that do not appear in the record, Mr. Kilberg was in arrears substantially in both mortgage and property tax payments. Lincoln Trust instituted foreclosure proceedings, and on June 23, 2003, it foreclosed its mortgage. At the foreclosure auction sale, Robert J. Campellone submitted the successful high bid of $450,000 and received a deed from Lincoln Trust, which was recorded on August 22, 2003. On June 11, 2004, Mr. Campellone sold the property to Sepe Investments, LLC (Sepe), an appellee in this case, for $1,240,000. Sepe then granted a mortgage to Slade's Ferry Trust Company (Slade's

Ferry), also an appellee. Both the deed to Sepe and the mortgage to Slade's Ferry were recorded on June 14, 2004.[1]

Before the mortgage foreclosure sale, the city also was taking action to collect the unpaid taxes. On May 23, 2003, it provided notice by certified mail to interested parties of an impending tax sale of the property. Among others, the city notified Mr. Kilberg, the record owner as of December 31, 2002, and Lincoln Trust, the first mortgage holder. It is undisputed, however, that the city did not provide notice by certified or registered mail to Mrs. Kilberg, the then owner of record. The city also posted notice of the sale in three public places and published notice in The Providence Journal for four weeks, all in accordance with G.L.1956 § 44-9-9.

On June 25, 2003, two days after the mortgage foreclosure sale, the city held the tax sale. The high bid of $81,740.99 was submitted by 140 Reservoir Avenue. A collector's deed conveying all right, title and interest in the property, subject to the right of redemption, was recorded on August 22, 2003. After the statutory one-year period had elapsed,[2] on July 23, 2004, 140 Reservoir Avenue filed a petition to foreclose the right of redemption against all parties claiming an interest in the property.[3] Sepe and Slade's Ferry filed a joint answer claiming, *inter alia*, that the tax sale was invalid and that they were bona fide purchasers for value. In the alternative, they requested permission to redeem the property upon such terms and conditions as the court might fix.

On December 1, 2004, Sepe and Slade's Ferry filed a motion to dismiss the petition to foreclose the right of redemption, relying only on the argument that the tax sale was invalid because the city failed to notify Joan Kilberg, the purported owner of record at the time of the tax sale. In a supplemental memorandum filed on January 12, 2005, they set forth a new argument, *viz.*, that Sepe took title free and clear of the tax sale because the city tax collector had failed to indicate on a municipal lien certificate that taxes had been paid as a result of a tax sale within the past twelve months as required by G.L.1956 § 44-7-11.

Sepe, Slade's Ferry, and 140 Reservoir Avenue appeared before the Superior Court on January 13, 2005. The hearing justice granted the motion to dismiss solely on the basis of the city's failure to provide proper notice to Joan Kilberg. The court subsequently issued an order on January 25, 2005 that declared the tax sale invalid and ordered the city treasurer to repay 140 Reservoir Avenue the amount it had paid at the tax sale.[4] When no check was forthcoming from the city treasurer's office, 140 Reservoir Avenue returned to the Superior Court and filed a petition for a writ of mandamus to compel the city treasurer to comply with the court's refund order.

1. At oral argument, counsel for Sepe indicated that Sepe recently had resold the property for $1.6 million.

2. *See* G.L.1956 § 44-9-25.

3. In its original petition, 140 Reservoir Avenue did not name either Sepe or Slade's Ferry as an interested party. It filed an amended petition, however, on September 15, 2004; the amended petition named both Sepe and Slade's Ferry. Also, 140 Reservoir Avenue did not notify the Providence tax collector of its petition, seemingly in violation of § 44-9-27. The city has not raised the issue of lack of notice in its appeal.

4. It will be remembered that at this time neither the city nor its treasurer had been notified of the petition to foreclose the right of redemption, and consequently they were not parties to the petition.

■ The city appeared and objected to the mandamus petition. The court held a brief hearing on March 24, 2005, at which the hearing justice declined to revisit his earlier ruling and granted the mandamus petition against the city. On April 7, 2005, the hearing justice entered an order and issued a writ of mandamus that directed the city to deliver to 140 Reservoir Avenue a check for $81,740.99. The city filed a notice of appeal on April 20, 2005. Although a final judgment was not entered until September 13, 2006, we shall treat the city's appeal as timely.[5]

## II

### Issues on Appeal

On appeal, the city contends that the hearing justice erred (1) by allowing Sepe and Slade's Ferry to raise a defense that, by statute, was personal to Joan Kilberg and (2) by applying the incorrect statute in determining the notice to which Mrs. Kilberg was entitled to receive. Specifically, the city argues that under § 44–9–11(b), as effective at the time of the tax sale, the right to notice was personal to each party entitled to it, and the lack of notice could not be asserted by any other party of interest. Consequently, the city asserts, Sepe and Slade's Ferry lacked standing to raise the defense of lack of notice to Mrs. Kilberg. Additionally, the city argues that any interest Mrs. Kilberg may have had in the property was extinguished by the mortgage foreclosure and that therefore Sepe and Slade's Ferry did not acquire any interest from her.

The city's second argument implicates the language of the statutory notification requirements in effect at the time of the tax sale. The city ascribes error to the hearing justice's finding that Joan Kilberg was entitled to notice under § 44–9–10, which provided in pertinent part:

"(a) Whether or not the person or general partnership to whom the estate is taxed as of December 31st prior to the tax sale is a resident of this state, the collector shall, in addition to the foregoing, notify the taxpayer of the time and place of sale either by registered or certified mail * * * not less than twenty (20) days before the date of sale * * *."[6]

---

**5.** This Court generally treats a premature notice of appeal as timely if a final judgment is entered. *McAdam v. Grzelczyk*, 911 A.2d 255, 258 n. 4 (R.I.2006) (citing *Dovenmuehle Mortgage, Inc. v. Antonelli*, 790 A.2d 1113, 1114 n. 1 (R.I.2002)).

**6.** Section 44–9–10(a) was amended in 2006 by P.L.2006, ch. 534, § 3 and now provides:

"Whether or not the person or general partnership to whom the estate is taxed as of December 31st prior to the tax sale is a resident of this state, the collector shall, in addition to the foregoing, notify the taxpayer of the time and place of sale first by first-class mail not less than ninety (90) days before the date of sale or any adjournment of the sale, and again by certified mail not less than forty (40) days before the date of sale or any adjournment of the sale, sent postpaid to the street address of the real estate liable for payment of taxes, and, if different, to the taxpayer's address listed with the tax assessor's office of the city or town where the real estate is located or to any other address which the taxpayer designates by written notice to the tax assessor, or to the address of the taxpayer stated on the deed recorded in the land evidence records of the city or town where the real estate is located or to the last known address of the taxpayer or be left at the taxpayer's last known address or personally served on the taxpayer not less than thirty (30) days before the date of sale or any adjournment of the sale, but no notice of adjournments shall be necessary other than the announcement made at the sale. Copies of such notices shall also be sent or hand delivered at the same time as prescribed above, to the Rhode Island Housing and Mortgage Finance Corporation. Failure to notify the Rhode Island Housing and Mortgage Finance Corporation as pre-

According to the city, it was required to send certified notice under § 44–9–10 only to Arnold Kilberg, the record owner as of December 31, 2002; the city further contends that, because Joan Kilberg acquired her interest after December 31, 2002, the notice to which she was entitled was governed by either § 44–9–9 (requiring notice in public places and a newspaper) or § 44–9–11.[7] Because at the time § 44–9–11 required certified notice only to certain enumerated parties whose interests were recorded at least ninety days before the tax sale, and Joan Kilberg's interest was recorded eighty-two days before the tax sale, the city argues she was entitled only to the advertising and posting requirements of § 44–9–9.

In response, Sepe and Slade's Ferry argue that they have standing to challenge the tax sale. Sepe and Slade's Ferry contend that they can raise Joan Kilberg's notice rights because they succeeded to her interest in the property and are in direct privity with her. They contend that a conveyance through a mortgage foreclosure passes all of the rights of the record owner in the form of a fee simple interest.

Because title to the property, with all of its rights and privileges—including the owner's right to defend against a tax sale invalid as to his or her predecessor in title—passed to Mr. Campellone as the successful bidder at the foreclosure sale, these rights were, in turn, conveyed to Sepe when it purchased the property from Mr. Campellone.

Turning to the merits, Sepe and Slade's Ferry assert that the term "taxpayer" in § 44–9–10 necessarily included the record owner at the time of the tax sale. In their view, to find otherwise would run afoul of state and federal due-process protections that require adequate notice of tax sales to parties of interest. They argue that the city's reading of § 44–9–10 would mean that the taxpayer as of the previous December 31, who no longer may have any interest in the property, would receive greater notice protection than the current owner, who has everything to lose. Because Joan Kilberg was not merely an interested party, but the record owner eighty-two days before the tax sale, Sepe and Slade's Ferry assert she was entitled to certified notice at least twenty days

scribed herein shall nullify any tax sale of any property with respect to which such notice was not given."

7. At the time of the tax sale, § 44–9–11, as amended by P.L.2002, ch. 140, § 1 said in pertinent part:

"(a) In case the collector shall advertise for sale any property, real, personal, or mixed, in which any person other than the person to whom the tax is assessed has an interest, it shall not be necessary for the collector to notify the interested party, except for the following interested parties, provided that their interest was of record at least ninety (90) days prior to the date set for the sale: mortgagees of record and mortgage assignees of record, former fee holders whose right to redeem has not been foreclosed, holders of tax title, federal agencies having a recorded lien on the subject property, holders of life estates of record, and vested remainder whose identity can be ascertained from an examination of the land or probate records of the municipality conducting the sale, and/or their assignees of record who shall be notified by the collector either by registered or certified mail sent postpaid not less than twenty (20) days before the date of sale or any adjournment of the sale, to an agent authorized by appointment or by law to receive service of process, or to the address of the party in interest set forth in the recorded mortgage document or the recorded assignment, or to the last known address of the party in interest, but no notice of adjournments shall be necessary other than the announcement made at the sale. The posting and publication of the notice of the time and place of sale in the manner provided by section 44–9–9 shall be deemed sufficient notice to all other interested parties."

before the tax sale, under § 44-9-10. They further contend that because failure to comply with statutory notice provisions invalidates a tax sale the city's failure to notify Joan Kilberg necessarily nullifies the tax sale.

Sepe and Slade's Ferry also argue that the city's interpretation of § 44-9-11 would violate due process and thus render the statute unconstitutional. Sepe and Slade's Ferry point out that the language in § 44-9-11 in effect at the time of the tax sale did not provide for any notice to the owner of record. At the time of the June 25, 2003 tax sale, § 44-9-11 required certified notice to various interested parties, subject to the condition that their interests were recorded ninety days before the tax sale, but the section did not specifically mention owners of record. The Rhode Island General Assembly later amended § 44-9-11 to require notice to "the present owner of record." P.L.2003, ch. 262, § 1 (effective on January 6, 2004). Thus, under current law, owners of record must receive notice only if their interest was recorded ninety days before the tax sale,[8] but at the time of the tax sale in this case, § 44-9-11 did not specifically enumerate owners of record. Sepe and Slade's Ferry assert, therefore, that in June 2003, § 44-9-10, and not § 44-9-11, governed the appropriate notice to property owners.

In the alternative, Sepe and Slade's Ferry argue that they purchased the property free and clear of the tax sale. Before closing on the property, Sepe and Slade's Ferry ordered a municipal lien certificate from the city in accordance with § 44-7-11. They argue that because the certificate did not mention 140 Reservoir Avenue's tax payment, they took title to the property free and clear of the tax sale by operation of law.

Finally, it is worth noting that 140 Reservoir Avenue has declined to take an active role in presenting additional arguments before this Court.[9] 140 Reservoir Avenue asserts that if this Court finds the tax sale void, then it must be reimbursed as an innocent purchaser. See § 44-9-43 (allowing refunds to innocent purchasers after invalid tax sales). However, 140 Reservoir Avenue also asserts that if this Court determines that the city held a valid tax sale, then the case should be remanded to the Superior Court to set the terms of redemption. See § 44-9-29 (setting forth rights of redemption for parties of interest).

### III

### Standard of Review

As a general matter, the authority for the sale of real estate for delinquent taxes "must be found in the statutes and such statutes will not be enlarged by judicial construction but will be strictly construed in favor of the owner." *First Bank & Trust Co. v. City of Providence*, 827 A.2d 606, 610 (R.I.2003) (quoting *Parker v. MacCue*, 54 R.I. 270, 272, 172 A. 725, 726 (1934)). This Court exercises a *de novo* standard of review with respect to ques-

---

8. In *Kildeer Realty v. Brewster Realty Corp.*, 826 A.2d 961, 965 (R.I.2003), we declined to pass on the constitutionality of the ninety-day window during which newly recorded interest holders are not entitled to notice under § 44-9-11(a). Because in this case, whatever interest the owner of record might have been able to assert in the property was barred before the tax sale, *see* G.L.1956 § 34-11-22, the question of the constitutionality of the ninety-day notice requirement still eludes us.

9. As a practical matter, the city makes the same arguments before this Court that 140 Reservoir Avenue made before the Superior Court.

tions of statutory interpretation. *State v. LaRoche,* 925 A.2d 885, 887 (R.I.2007).

## IV

## Discussion

### A. The Validity of the Tax Sale

■ We first address the city's argument that the trial justice erred by ruling the tax sale invalid because Joan Kilberg did not receive notice of the tax sale under the provisions of § 44–9–10. The rights of the parties at a tax sale foreclosure proceeding are determined by the law in force on the date of the tax sale. *See Sycamore Properties, LLC v. Tabriz Realty, LLC,* 870 A.2d 424, 427 n. 7 (R.I.2005); *Kildeer Realty v. Brewster Realty Corp.,* 826 A.2d 961, 965 (R.I.2003); *Town of Jamestown v. Pennsylvania Company for Banking and Trusts,* 101 R.I. 274, 279, 221 A.2d 821, 823 (1966). At the time of the June 25, 2003, tax sale, § 44–9–11(b), as amended by P.L. 2002, ch. 140, § 1 said:

> "Only a person or entity failing to receive notice in accordance with the provisions of this section and §§ 44–9–9 and 44–9–10 shall be entitled to raise the issue of lack of notice or defective notice to void the tax sale. The right to notice shall be personal to each party entitled to it and shall not be asserted on behalf of another party in interest. If there is a defect in notice, the tax sale shall be void only as to the party deprived of adequate notice, but shall be valid as to all other parties in interest who received proper notice of the tax sale."

Sepe and Slade's Ferry cite G.L.1956 § 34–11–28 for the proposition that they are the same party in interest as Joan Kilberg. They argue that a conveyance through a mortgage foreclosure passes all the rights of the record owner to the successful bidder in a fee simple interest. Section 34–11–28 provides in pertinent part that "[i]n any conveyance of real estate all rights, privileges, and appurtenances belonging or appertaining to the granted estate shall be included in the conveyance * * *."

■ Rhode Island is a title-theory state, in which "a mortgagee not only obtains a lien upon the real estate by virtue of the grant of the mortgage deed but also obtains legal title to the property subject to defeasance upon payment of the debt." *In re D'Ellena,* 640 A.2d 530, 533 (R.I.1994). In *Block Island Land Trust v. Washington Trust Co.,* 713 A.2d 199, 201 (R.I.1998), we explained that the "title theory is a fiction designed to aid in decision making; it is not an absolute per se rule of law." Nevertheless, we noted that "[i]n this state a first mortgage is a conveyance to [the] mortgagee of the legal fee in the land, defeasible upon condition that the mortgagor will perform the condition of the mortgage." *Id.* (quoting *Houle v. Guilbeault,* 70 R.I. 421, 423, 40 A.2d 438, 440 (1944)).

In the case under review, before the mortgage foreclosure sale, legal title to the property was held by Lincoln Trust subject to the right of the mortgagor, Arnold Kilberg, to defeasance upon his payment of the promissory note and satisfaction of the mortgage conditions. Mr. Kilberg then conveyed his interest in the property to his wife, Joan Kilberg, by quitclaim deed, and on June 23, 2003 Lincoln Trust foreclosed her equity of redemption by selling the property at a mortgage foreclosure sale.

■ Significantly, § 34–11–22 provides that a foreclosure conducted by statutory power of sale "shall forever be a perpetual bar against the mortgagor and his, her or its heirs, executors, administrators, successors and assigns, and all persons claiming the premises, so sold, by, through or under him or her, them or any of them." Thus, any interest that may have reposed in

Joan Kilberg was forever barred by the foreclosure sale because she was the successor in interest to Arnold Kilberg, the mortgagor.[10] At the time of the tax sale, she no longer held an interest in the property and could not have claimed a right to notice under § 44–9–10. *See* 4 Richard R. Powell, *Powell on Real Property*, § 37.46 at 37–317 (2007) ("[T]he mortgagor has an opportunity to redeem down to the time of the [mortgage foreclosure] sale * * *, but this opportunity comes to an end with such sale * * *. From that point on, the equity court ceases to be concerned with the mortgagor in relation to the land."). We conclude, therefore, that the hearing justice erred by invalidating the tax sale for lack of notice to Mrs. Kilberg.

## B. The Municipal Lien Certificate

Before closing on the property, Sepe and Slade's Ferry ordered a municipal lien certificate from the city. They argued before the Superior Court, as they do on appeal, that because the certificate did not mention 140 Reservoir Avenue's tax payment as a result of a tax sale, they took title to the property free and clear of the tax sale pursuant to § 44–7–11.[11] The city contends that, regardless of the merits of this argument, Sepe and Slade's Ferry waived it because they failed to raise it in their answer to 140 Reservoir Avenue's petition to foreclose the right of redemption. The city cites § 44–9–31, which says:

"**Contest of validity of tax title.**—If a person claiming an interest desires to raise any question concerning the validity of a tax title, the person shall do so by answer filed in the proceeding on or before the return day, or within that further time as may on motion be allowed by the court, or else be forever barred from contesting or raising the question in any other proceeding. He or she shall also file specifications setting forth the matters upon which he or

---

10. We note that no party has challenged the validity of the mortgage foreclosure sale.

11. General Laws 1956 § 44–7–11 says in pertinent part:

"(a) * * * The collector of taxes for any city, town, or fire district shall, on written application by any person, * * * furnish to the applicant a single certificate of all taxes and other assessments, including water rates and charges, which at the time constitute liens on the parcel of real estate specified in the application and are payable on account of the real estate. The certificate shall be itemized and shall show the amounts payable on account of all taxes and assessments, rates, fees and charges, so far as the amounts are fixed and ascertained, and if the amounts are not then ascertainable, it shall be expressed in the certificate. In addition, the tax certificate shall include: (1) a statement as to whether there are any tax sales scheduled which would affect the parcel of real estate noted in the certificate; and (2) a statement as to whether any of taxes or other assessments noted on the tax certificate as being paid in full were paid as the result of a sale held pursuant to the provisions of chapter 9 of this title within the twelve (12) month period immediately preceding issuance of the certificate. * * * A certificate issued on or after October 1, 1966, under this section may be filed or recorded with the land evidence records of the city or town in which the real estate shall be situated within sixty (60) days after its date, and if filed or recorded shall operate to discharge the parcel of real estate specified from the liens for all taxes, assessments or portions, rates, fees and charges which do not appear by the certificate to constitute liens, except the taxes, assessments or portions, rates, fees and charges which have accrued within one year immediately preceding the date of the certificate; provided, that they are noted in the certificate, and the taxes, assessments or portions, rates, and charges concerning which a statement has been filed or recorded in the land evidence records. A certificate issued under this section shall not affect the obligation of any person liable for the payment of any tax, assessment, rate, fee, or charge."

she relies to defeat the title; and unless the specifications are filed, all questions of the validity or invalidity of the title, whether in the form of the deed or proceedings relating to the sale, shall be deemed to have been waived. Upon the filing of the specifications, the court shall hear the parties and shall enter a decree in conformity with the law on the facts found."

The hearing justice ruled that the tax sale was invalid because the city failed to notify Mrs. Kilberg, and he did not discuss Sepe and Slade's Ferry's argument about the faulty municipal lien certificate. Sepe and Slade's Ferry now suggest to us, however, that the erroneous municipal lien certificate provides an alternate basis for affirming the Superior Court judgment because the trial justice would have been correct in ruling that the property was discharged from the tax sale because the city issued the municipal lien certificate. We disagree.

The language of § 44–7–11 does not suggest that the title purchased at a tax sale is defeated merely by the subsequent issuance and recording of a municipal lien certificate that fails to list the tax sale. In this case, the hearing justice predicated his ruling on other grounds and simply did not address the issue of the municipal lien certificate. Moreover, the city had not even been made a party to the proceedings when the issue was raised. Any questions concerning the allegedly faulty lien certificate first should be addressed at a hearing in which the city is a full participant. We decline, therefore, Sepe and Slade's Ferry's invitation to affirm the Superior Court judgment on the basis of the municipal lien certificate.

## V

### Conclusion

For the foregoing reasons, the judgment is vacated, the writ of mandamus is quashed, and the case is remanded to the Superior Court for further proceedings on the petition to foreclose the right of redemption.