Kathy LAMARQUE et al.

v.

CENTREVILLE SAVINGS BANK.

No. 2010–67–Appeal.

Supreme Court of Rhode Island.

June 17, 2011.

Arthur D. Parise, Esq., Warwick, for Plaintiff.

Geoffrey W. Millsom, Esq., Providence, for Defendant.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, ROBINSON, and INDEGLIA, JJ.

## OPINION

Justice GOLDBERG, for the Court.

This case came before the Supreme Court on May 4, 2011, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. Kathy Lamarque (Lamarque or plaintiff), appeals from a Superior Court judgment entered in favor of the defendant, Centreville Savings Bank (Centreville or defendant), after a bench trial, in which the trial justice concluded that the plaintiff had not produced evidence that the defendant had violated her privacy rights or breached any duty of care owed to her when it disclosed the balance of a mortgage loan that she and her former husband, Andre Lamarque (Andre), owed to the defendant.[1] After reviewing the memoranda submitted by the parties and the arguments of counsel, we are satisfied that cause has not been shown; thus, the appeal may be decided at this time. For the reasons set forth below, we affirm the judgment of the Superior Court.

## Facts and Travel

This appeal stems from foreclosure proceedings and the subsequent sale of property located at 96 Narragansett Avenue in West Warwick (the property), formerly owned by plaintiff and her then-husband. The plaintiff informs us that she and her then-husband executed a twenty-five year mortgage with Centreville in 1978. In 1995, they refinanced their home, executing a second mortgage with Conti Mortgage Corporation that was serviced by Fairbanks Capital Corporation (Fairbanks). Sometime in 2001, the Lamarques apparently defaulted on their Fairbanks loan; and, in December 2001, the property was purchased at a foreclosure sale by a man identified as Anthony Ciccarone (Ciccarone). The plaintiff alleged that Ciccarone's attorney asked Centreville for the balance of the Lamarques' mortgage loan, which Ciccarone apparently then paid. Although plaintiff and her family learned of the foreclosure sale in December 2001, plaintiff says she did not find out about the purported disclosure to Ciccarone until October 2005, when plaintiff met with a vice

---

1. It appears that Kathy Lamarque is the only plaintiff pursuing an appeal. Although plaintiff Andre Lamarque's name was included on the notice of appeal, only one filing fee was paid. Each party is required to pay the $150 filing fee required under Article I, Rule 5(a) of the Supreme Court Rules of Appellate Proce-dure. *Tateosian v. Celebrity Cruise Services, Ltd.,* 768 A.2d 1248, 1249 n. 1 (R.I.2001). Also, because Kathy Lamarque is the only plaintiff to have submitted a prebriefing statement, she is the only party before the Court on appeal.

president of Centreville.[2] This alleged disclosure forms the basis of the instant litigation.

The Lamarques, acting *pro se,* filed suit against Centreville in October 2007. After some initial discovery took place, the trial justice granted defendant's motion for summary judgment in part. In his bench decision, the trial justice noted that it was difficult to decipher the specific claims plaintiff had raised, but he proceeded to discern four causes of action. The trial justice granted summary judgment with respect to the Lamarques' claim that they had a right of redemption after the foreclosure sale and with respect to the claim that Centreville had breached a contract with plaintiffs. The trial justice denied summary judgment with respect to the privacy claim, holding that there was at least a mixed question of law and fact about whether defendant violated the Lamarques' privacy rights as set forth in G.L.1956 § 9–1–28.1(a)(3).[3] He also denied summary judgment with respect to the negligence claim, on the ground that the Gramm–Leach–Bliley Act, 15 U.S.C. §§ 6801 to 6809,[4] may give rise to a legal duty on the part of defendant to refuse to disclose private information.

A bench trial then ensued, in which plaintiff's son, Todd Lamarque (Todd), and daughter-in-law, Brenda Lamarque (Brenda), were called as plaintiff's witnesses. Todd testified that he lived at the property during the summer and on weekends and paid the bills, including the mortgage. He testified that he accompanied his mother to Centreville in October 2005 to obtain information about their account and the foreclosure of the property, but was told by defendant that it could not release any information to the Lamarques without a subpoena. Brenda largely testified about the adverse effects of the foreclosure and subsequent litigation on the family's wellbeing. Neither plaintiff nor Andre testified. A number of documents were admitted as full exhibits, including a document from Centreville's records showing that their loan had been paid by Ciccarone's attorney. The plaintiff attempted to submit as full exhibits affidavits of Ciccarone's attorney and his paralegal, as well as a letter written by defendant's attorney to the Department of Business Regulation. These three documents each referred to defendant's having disclosed the balance of plaintiff's mortgage to Ciccarone's attorney; however, based on hearsay grounds, the trial justice did not admit them as full exhibits. After plaintiff rested, defendant immediately moved for a judgment on partial findings, in accordance with Rule 52(c) of the Superior Court Rules of Civil Procedure.

Centreville argued that to establish a cause of action for a violation of one's privacy, plaintiff was required to prove that Centreville published a private fact and that this publication would be offensive to a reasonable person. The defen-

---

**2.** It is not clear when plaintiff and her ex-husband first learned that Ciccarone had paid off the balance of the Centreville loan. During a colloquy with the trial justice, plaintiff, acting *pro se,* explained to the court that Ciccarone began claiming ownership in 2001 and that the Lamarques paid rent to him while their lawsuit against Ciccarone and Fairbanks proceeded. *See Lamarque v. Fairbanks Capital Corp.,* 927 A.2d 753 (R.I.2007).

**3.** General Laws 1956 § 9–1–28.1(a)(3), which creates the right to privacy, provides that "every person in this state shall have a right to privacy[,]" which includes "[t]he right to be secure from unreasonable publicity given to one's private life[.]"

**4.** The relevant portion of the Gramm–Leach–Bliley Act provides that "[a] financial institution may not disclose nonpublic personal information to a nonaffiliated third party[.]" 15 U.S.C. § 6802(b)(1).

dant argued that plaintiff failed to establish any of the elements to support this claim. With respect to the negligence count, defendant conceded that the Gramm–Leach–Bliley Act and Centreville's own privacy policy precluded Centreville from disclosing nonpublic personal information; however, Centreville argued that there could be no breach of those policies because plaintiff failed to prove that Centreville had disclosed the mortgage information to anyone. Conversely, Centreville contended that even if there were evidence that it had disseminated the payoff amount, such a disclosure would have occurred after the foreclosure proceedings. At that point, Centreville argues, the payoff figure no longer was privileged information because of the concomitant interests of Ciccarone and Centreville in the property.

After setting forth the appropriate procedure to be employed in granting a judgment on partial findings in a jury-waived trial, the trial justice outlined the facts that were in evidence and that supported defendant's Rule 52 motion. The trial justice noted that the Lamarques, although adamantly asserting that Centreville disclosed the balance of the loan, never established at trial that any disclosure was made. This evidentiary failure proved to be the death knell for plaintiff's case. With respect to the alleged privacy violation, the trial justice concluded that the Lamarques had not shown that any fact had been disclosed, let alone private information whose disclosure would be offensive to a reasonable person. As to the

negligence claim, the trial justice noted that in the context of this case, defendant's legal duty to plaintiff was unclear. The trial justice recognized that at a minimum, Centreville was required to act with reasonable care; however, after reviewing the Gramm–Leach–Bliley Act, the trial justice determined that the act did not establish a private right of action in which plaintiff could challenge whether Centreville lawfully disclosed nonpublic personal information. Even if there were such a private right of action, the trial justice was not convinced that the balance of plaintiff's mortgage was nonpublic personal information.

The plaintiff timely appealed to this Court. On appeal, she argues that her right to privacy, as protected by § 9–1–28.1, was violated by Centreville. Further, it appears that she argues that both the Gramm–Leach–Bliley Act and Centreville's privacy policy create a legal duty to protect private information from disclosure and that therefore, the trial justice erred in interpreting both the act and the policy. For these reasons, she has asked this Court to remand the case for a new trial. In response, Centreville contends that the judgment of the Superior Court should be affirmed because plaintiff failed to produce any evidence at trial to support her claims.[5]

## Standard of Review

 "A judgment in a nonjury case will be reversed on appeal when it can be shown that the trial justice misapplied the law, misconceived or overlooked material

---

5. Centreville also contends that plaintiff's privacy claim was barred by the statute of limitations, in accordance with G.L.1956 § 9–1–14(b) which provides that the statute of limitations for personal injury actions is three years. The defendant asserts that plaintiff knew or should have known of the alleged disclosure in December 2001 when the prop-

erty was foreclosed. It is unclear when plaintiff contends that she learned of the alleged disclosure. We need not determine whether the statute of limitations barred plaintiff's claim because we are of the opinion that she failed to prove the elements of each cause of action.

evidence or made factual findings that were clearly wrong." *Cathay Cathay, Inc. v. Vindalu, LLC,* 962 A.2d 740, 745 (R.I. 2009) (quoting *Town of West Greenwich v. A. Cardi Realty Associates,* 786 A.2d 354, 357–58 (R.I.2001)). When we review the factual findings of a trial justice sitting without a jury, we accord those findings great deference. *Ondis v. City of Woonsocket ex rel. Treasurer Touzin,* 934 A.2d 799, 802 (R.I.2007). Pure questions of law, however, we review on a *de novo* basis. *Cathay Cathay, Inc.,* 962 A.2d at 745; *Ondis,* 934 A.2d at 802.

### Analysis

■ The plaintiff's first appellate contention is that her privacy rights were violated. Section 9–1–28.1(a) makes it "the policy of this state that every person in this state shall have a right to privacy." Specifically, the General Assembly provided protection from four different invasions of privacy, including "[t]he right to be secure from unreasonable publicity given to one's private life." Section 9–1–28.1(a)(3). "To state a cause of action [for this tort,] a plaintiff must show (1) 'publication' (2) of a 'private fact' (3) that the 'fact which has been made public [is] one which would be offensive or objectionable to a reasonable man of ordinary sensibilities,' §§ 9–1–28.1(a)(3)(i)–(ii), and (4) damages, § 9–1–28.1(b)." *Pontbriand v. Sundlun,* 699 A.2d 856, 864 (R.I.1997).

■ The plaintiff also has appealed from the dismissal of the negligence claim. To prevail on a negligence claim, a plaintiff must show that the defendant owed the plaintiff a duty and also that the defendant breached that duty. *See Berman v. Sitrin,* 991 A.2d 1038, 1047 (R.I.2010) (citing *Haley v. Town of Lincoln,* 611 A.2d 845, 848 (R.I.1992)). Here, plaintiff has argued that Centreville failed to act with reasonable care by disclosing her mortgage infor-

mation and, alternatively, that Centreville breached its duty to not disclose her non-public information in accordance with both Centreville's privacy policy and the Gramm–Leach–Bliley Act. Because of the overlapping elements of the privacy and negligence claims, we address the claims simultaneously. The trial justice determined that plaintiff had failed to prove the required elements of both claims. We agree.

To prove "publication," we have held that it "does not require that the information be disseminated in a newspaper but merely that it be repeated [or disclosed] to a third party." *Pontbriand,* 699 A.2d at 864 (citing *Gaudette v. Carter,* 100 R.I. 259, 260–61, 214 A.2d 197, 199 (1965)). Despite this low threshold, plaintiff failed to establish that Centreville disclosed any information to any third party. We note that, although plaintiff attempted to submit several documents into evidence purportedly to establish that a disclosure was made, the documents were excluded on hearsay grounds. Thus, we, like the trial justice, are confronted with a failure of proof.

■ However, if publication had been proven, plaintiff nonetheless was required to show that the amount of the loan balance was, in fact, private information. *See* 15 U.S.C. § 6802(a) (providing that a financial institution may not disclose nonpublic personal information to a nonaffiliated third party); § 9–1–28.1(a)(3)(A). Proof of a private fact requires that plaintiff "demonstrate that [she] actually expected a disclosed fact to remain private, and that society would recognize this expectation of privacy as reasonable and be willing to respect it." *Swerdlick v. Koch,* 721 A.2d 849, 858 (R.I.1998) (quoting *Pontbriand,* 699 A.2d at 865).

■ We are of the opinion that, in view of the circumstances of this case, the amount of the mortgage payoff does not constitute private information such that it would constitute an invasion of plaintiff's privacy rights, nor that the disclosure of that amount would be a breach of defendant's duty to plaintiff. At the time of the alleged disclosure, both defendant and Ciccarone had cognizable property interests in the home. Ciccarone had purchased the property at the Fairbanks foreclosure sale, subject to the Centreville loan (*see Armand's Engineering, Inc. v. Town & Country Club, Inc.,* 113 R.I. 515, 520, 324 A.2d 334, 338 (1974) (noting that "[i]n a foreclosure of a junior mortgage, the senior mortgage remains on the land and the buyer takes the property, subject to this mortgage which remains on the land")), such that Ciccarone, although not personally liable for the balance of the loan to Centreville, risked losing title to the property had the loan not been paid. *See* Restatement (Third) *Property: Mortgages* § 5.2, cmt. *b.* at 351 (1997) ("A transferee does not, merely by acquiring mortgaged real estate, become personally liable on the obligation secured by the mortgage. Only an express assumption of liability will have that effect. * * * [However,] [a] non-assuming transferee has the risk of loss of title to the real estate by foreclosure if the secured obligation is not performed * * *."). Additionally, in Rhode Island, "a mortgagee not only obtains a lien upon the real estate by virtue of the grant of the mortgage deed but also obtains legal title to the property subject to defeasance upon payment of the debt." *140 Reservoir Avenue Associates v. Sepe Investments, LLC,* 941 A.2d 805, 811 (R.I.2007) (quoting *In re D'Ellena,* 640 A.2d 530, 533 (R.I.1994)). *See Houle v. Guilbeault,* 70 R.I. 421, 423, 40 A.2d 438, 440 (1944). Therefore, Centreville had a legal interest in the property dating to 1978, when plaintiff and her then-husband undertook the mortgage. That interest continued until the balance of the loan was paid in full. We are not convinced that plaintiff's expectation that her mortgage payoff figure would be kept private was reasonable, such that disclosure of it would constitute a breach of defendant's duty of reasonable care, nor a privacy interest which society would be willing to recognize in light of the interests Ciccarone and defendant had in the property. *See Pontbriand,* 699 A.2d at 865.

Furthermore, at all times relevant to this case, defendant maintained an interest in recouping the money that it had loaned to plaintiff. In *O'Coin v. Woonsocket Institution Trust Co.,* 535 A.2d 1263, 1266 (R.I.1988), we noted with approval a well-known English case, *Tournier v. National Provincial and Union Bank of England,* 1 K.B. 461, 486 (1924), which stated "the obligation not to disclose information * * * is subject to the qualification that the bank [has] the right to disclose such information when, and to the extent to which it is reasonably necessary for the protection of the bank's interests[.]" Accordingly, considering Centreville's title interest in the property, as well as its pecuniary interests in recouping its money, we cannot say that the amount that plaintiff owed on the mortgage constitutes private information that society would recognize as protected by the privacy statute or the law of negligence.[6]

---

**6.** We note that the *O'Coin v. Woonsocket Institution Trust Co.,* 535 A.2d 1263 (R.I.1988) and *Tournier v. National Provincial and Union Bank of England,* 1 K.B. 461 (1924) cases concerned the implied contractual duty of confidentiality. Although different from this claim, because these opinions dealt with alleged improper disclosures of bank information and instances in which it would be appropriate for a bank to disclose allegedly confidential information, we are of the opin-

In this case, the plaintiff had the burden of proving there was a disclosure of a private fact and that the disclosure is a type that would be objectionable to a reasonable person of ordinary sensibilities. Section 9–1–28.1(a)(3). Additionally, under either theory, the plaintiff was required to prove damages. She has failed to do so; there is no evidence that the plaintiff suffered an injury due to the alleged disclosure—Ciccarone was already the legal owner of the property at the time of the alleged disclosure and subsequent payment.

### Conclusion

For the reasons set forth in this opinion, the judgment of the Superior Court is affirmed. The papers in this case may be returned to the Superior Court.

ion that these cases equally should be applied to these tort analyses.