December 15, 2017

**Supreme Court**

| | | |
|---|---|---|
| State ex rel Town of Tiverton | : | No. 2014-123-C.A. (N3/09-238A) |
| v. | : | |
| James Pelletier. | : | |
| State ex rel Town of Tiverton | : | No. 2014-124-C.A. (N3/09-238B) |
| v. | : | |
| Melissa Pelletier. | : | |
| James Pelletier et al. | : | No. 2014-298-Appeal. (NC 09-443) |
| v. | : | |
| Town of Tiverton. | : | |

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

| State ex rel Town of Tiverton | : | No. 2014-123-C.A. |
| | | (N3/09-238A) |
| v. | : | |
| James Pelletier. | : | |
| State ex rel Town of Tiverton | : | No. 2014-124-C.A. |
| | | (N3/09-238B) |
| v. | : | |
| Melissa Pelletier. | : | |
| James Pelletier et al. | : | No. 2014-298-Appeal. |
| | | (NC 09-443) |
| v. | : | |
| Town of Tiverton.[1] | : | |

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Goldberg, for the Court.** These consolidated cases came before the Supreme Court on October 4, 2017, on appeal by the defendants, James and Melissa Pelletier (defendants), from a judgment of conviction entered in the Superior Court, following a bench trial. The defendants were convicted of violating Tiverton Zoning Ordinance Article IV, Section 3(a).

Before this Court, defendants argue: (1) that producing compost on their property is an accessory use to their permitted nursery activities; (2) that the findings and conclusions of the trial justice were clearly wrong because she overlooked and misconceived material evidence; and (3) that Tiverton Zoning Ordinance Article IV, Section 13(a), is unconstitutionally vague and is therefore void. For the reasons set forth herein we affirm the judgment.

---

[1] This case has been settled.

## Facts and Travel

The defendants own a thirty-acre tract of land located on Crandall Road in Tiverton (the property). On March 16, 2009, defendants were served with a summons and complaint charging them with violating Article IV, Section 13(a) for manufacturing compost on the property, which is located in an R-80 zoning district.[2] Although raising crops commercially, including an associated greenhouse or nursery, is a permitted activity in an R-80 zone, industrial manufacturing, storing, processing, and fabricating activities in an R-80 zone are prohibited by Section 13(a) of the ordinance. After a trial in the Tiverton Municipal Court, defendants were found liable for manufacturing compost in an R-80 zone in violation of Article IV, Section 13(a) of the zoning ordinance, resulting in a $2,000 fine. The order declared that defendants were engaged in the mixing together of organic materials for the purpose of manufacturing compost in an R-80 zone in violation of Article IV, Section 13(a) of the ordinance.

The defendants appealed the Municipal Court Order in accordance with G.L. 1956 § 45-2-34[3] and were afforded a trial *de novo* in Superior Court. A trial commenced on October 4,

---

[2] A residential R-80 zone consists of the residential portions of the entire area of Tiverton south of Bulgarmarsh Road that are composed of agricultural uses, low-density residential areas, and certain open spaces for which development at lower than one dwelling unit per 80,000 square feet is considered appropriate.

[3] General Laws 1956 § 45-2-34 provides in pertinent part:

> "(1) The town council of the town of Tiverton may establish a municipal court and confer upon that court original jurisdiction, notwithstanding any other provisions of the general laws, to hear and determine causes involving the violation of any ordinance, including minimum housing ordinances of the town and any violation of the provisions of chapter 24.3 of this title, entitled the Rhode Island Housing Maintenance and Occupancy Code; provided, however, that any defendant found guilty of any offense, excluding violations of the minimum housing ordinances or chapter 24.3 may, within seven (7) days of conviction, file an

2010, in Superior Court. The Town of Tiverton (the town) presented three witnesses: Daniel Lawton, an Environmental Scientist and Inspector with the Rhode Island Department of Environmental Management (DEM); Gareth Eames, the town's Building and Zoning Official; and Peter Mello, defendants' neighbor.

Mr. Lawton testified that he visited the property on four occasions between February 2007 and September 2010 and that on each occasion there were piles of material including: manure, woodchips, solid waste, yard waste, and bedding, along with combinations of the aforementioned materials, which he deemed to be compost. At trial, Lawton identified photographs of piles of organic materials situated on the property: "This is what I observed and believed to be screened compost * * * [t]his is what I observed and believed to be a pile of soil mixed with compost." Mr. Pelletier informed Lawton that he was starting a tree nursery on the property. Lawton inspected the nursery area of the property, where he observed approximately fifty trees with compost piled on the base of the trees.[4] It is undisputed that the Pelletiers also own and operate a landscaping business, Tiger Tree LLC.

Mr. Eames testified that he began receiving complaints regarding defendants' property in 2005. He made about 100 site visits to the property between 2005 and 2010. As a result of these visits and his communications with DEM, he issued two notices of violation of Article IV, Section 13(a), on January 23, 2009, and February 18, 2009. He observed large piles of manure and yard waste. Significantly, he also observed industrial earth-moving equipment used in the processing of compost, including a dump truck, a front-end loader, a bucket loader, an excavator,

---

appeal from the conviction to the [S]uperior [C]ourt and be entitled
in the latter court to a trial de novo * * *."

[4] The Pelletiers have a valid nursery license from the Department of Environmental Management.

a skid steer, and a trommel[5] on the property. During one of Eames's site visits in 2008, Pelletier admitted to him that he was making compost on the property. Mr. Eames stated that Pelletier had said: "I'm making compost." Furthermore, in 2010, Eames saw trees in the nursey section of the property—which comprised approximately one acre of the thirty acre tract—but there was no compost at the base of the trees. Mr. Eames acknowledged that because the zoning ordinance does not define "compost," he looked to Webster's Dictionary before determining that defendants were in violation of the ordinance.[6]

Finally, Mello testified that he resides approximately 300 feet from the property and was repeatedly disturbed by construction noise from the property which he described as, "[t]he humming of heavy equipment, industrial equipment constantly in the background in the neighborhood, and then the increased volume of tractor trailers coming up and down the street," entering and exiting defendants' property. Mr. Mello was bothered by the construction noise because it "vibrate[d] down to [his] house." He observed industrial machinery coming to and from the property and other equipment such as bulldozers, a trommel, backhoes, and tractor

---

[5] A trommel is defined as "[a] revolving cylindrical sieve used for screening or sizing rock and ore." The American Heritage Dictionary of the English Language 1860 (5th ed. 2011).

[6] Mr. Eames testified to the Webster's Dictionary definition of "compost" at trial:

> "I visited Webster's Dictionary and discovered that under compost, it was a verb, which was to convert something into compost, the noun.
>
> "* * *
>
> "Well, I further went to the dictionary again to look for the word convert; the first meaning was a religious one, and the second one was to transform from one state to another."

We note that the dictionary definition of "compost" is the process in which "[a] mixture of organic matter, as from leaves and manure, that has decayed or has been digested by organisms, used to improve soil structure and provide nutrients." The American Heritage Dictionary of the English Language 378 (5th ed. 2011).

trailers. Mr. Mello also witnessed the trommel in operation on numerous occasions and saw Pelletier mixing the material with his equipment and also observed steam developing from the mass of material on the property. In order to document defendants' activities, Mello took a series of photographs depicting the piles of compost material and industrial equipment on the property, which photographs were introduced into evidence at trial.

At the close of the town's evidence, defendants moved to dismiss the complaint in accordance with Rule 29 of the Superior Court Rules of Criminal Procedure.[7] The trial justice denied defendants' motion, and the defense case proceeded on July 23, 2013. Over the course of four trial days on various dates, defendants presented two witnesses: Pelletier and Joseph Lombardo, an expert in the field of land-use planning. Mr. Pelletier testified about the various organic materials that were stockpiled on the property, and he admitted that materials such as the grass clippings, yard waste, and horse manure were also shipped from off-site for the purpose of composting. However, he disagreed that he was "manufacturing" compost because he indicated that, once the materials are mixed together, "nature takes over" and compost develops naturally when certain organic materials are combined in a heap. Mr. Lombardo testified that he visited the property for two hours in April 2010. In his opinion, defendants' actions could not be categorized as an industrial use, and he stated that no manufacturing process was taking place on the property because defendants' compost was not being packaged and sold as a product off-site.

On September 27, 2013, the trial court issued a written decision finding beyond a reasonable doubt that defendants violated the Tiverton Zoning Ordinance by manufacturing

---

[7] Rule 29(b) of the Superior Court Rules of Criminal Procedure provides:

> "In a case tried without a jury, a motion to dismiss may be filed at the close of the State's case to challenge the legal sufficiency of the State's trial evidence."

compost on the property.[8]  The defendants appealed to this Court and raised seven issues on appeal: (1) whether composting is permitted in an R-80 zone; (2) whether the "manufacturing of compost" is permitted in an R-80 zone; (3) whether the town has proven beyond a reasonable doubt that defendants were "industrially manufacturing compost" within the intent of Article IV, Section 13(a) of the zoning ordinance; (4) whether the zoning code is unconstitutionally vague and fails to provide defendants with the requisite notice that manufacturing compost is not permitted in an R-80 zone; (5) whether defendants' composting activities are protected by the Rhode Island Right to Farm Act, G.L. 1956 chapter 23 of title 2[9]; (6) whether the town is

---

[8] Although the town sought to assess a fine in excess of $1.7 million, the court imposed a nominal fine of $1.

[9] General Laws 1956 § 2-23-4, the Rhode Island Right to Farm Act, provides:

> "(a) As used in this chapter, "agricultural operations" includes any commercial enterprise that has as its primary purpose horticulture, viticulture, viniculture, floriculture, forestry, stabling of horses, dairy farming, or aquaculture, or the raising of livestock, including for the production of fiber, furbearing animals, poultry or bees, and all such other operations, uses, and activities as the director, in consultation with the chief of [the] division of agriculture, may determine to be agriculture, or an agricultural activity, use or operation.  The mixed-use of farms and farmlands for other forms of enterprise including, but not limited to, the display of antique vehicles and equipment, retail sales, tours, classes, petting, feeding and viewing of animals, hay rides, crop mazes, festivals and other special events are hereby recognized as a valuable and viable means of contributing to the preservation of agriculture.
>
> "(b) Nothing herein shall be deemed to restrict, limit, or prohibit nonagricultural operations from being undertaken on a farm except as otherwise restricted, regulated, limited, or prohibited by law, regulation, or ordinance to affect the rights of persons to engage in other lawful nonagricultural enterprises on farms; provided, however, that the protections and rights established by this chapter shall not apply to such nonagricultural activities, uses or operations."

estopped from assessing any fine against defendants; and (7) whether the compost registration defendants obtained from DEM preempts any local zoning ordinances that prohibit composting in a residential zone.[10]

We note at the outset that, although defendants have raised multiple issues on appeal, several issues were not argued to the trial justice and therefore are not preserved for appellate review.[11] This Court has long adhered to the "raise or waive" rule, which provides that "an issue that has not been raised and articulated previously at trial is not properly preserved for appellate review." *In re Shy C.*, 126 A.3d 433, 434-35 (R.I. 2015) (quoting *State v. Gomez*, 848 A.2d 221, 237 (R.I. 2004)). Moreover, "if an issue was not preserved by *specific objection* at trial, then it may not be considered on appeal." *State v. Pona*, 66 A.3d 454, 468 (R.I. 2013) (quoting *State v. McManus*, 990 A.2d 1229, 1237 (R.I. 2010) (emphasis added)). Therefore, we shall address only those issues that are properly before the Court. The narrow issue before this Court is whether defendants' conviction is proper based on the evidence. For the reasons set forth herein, we affirm the judgment.

### Standard of Review

The decision of a trial justice in a criminal bench trial will not be disturbed absent a record showing that "the trial justice misapplied the law, misconceived or overlooked material evidence or made factual findings that were clearly wrong." *Lamarque v. Centreville Savings Bank*, 22 A.3d 1136, 1139-40 (R.I. 2011) (quoting *Cathay Cathay, Inc. v. Vindalu, LLC*, 962 A.2d 740, 745 (R.I. 2009)). The "factual findings of a trial justice sitting without a jury are

---

[10] Following defendants' appeal, the town filed a cross-appeal asking this Court to address the trial justice's imposition of a nominal fine, but it later withdrew that appeal.

[11] Specifically, the nonpreserved issues are: whether defendants' activities are protected by the Right to Farm Act, whether the town is collaterally estopped from assessing a fine against defendants, and whether defendants' compost registration preempts their conviction.

granted an extremely deferential standard of review." *State v. Gianquitti*, 22 A.3d 1161, 1165 (R.I. 2011).

On the other hand, questions implicating statutory interpretation are questions of law and are, therefore, reviewed *de novo* by this Court. *See Town of North Kingstown v. Albert*, 767 A.2d 659, 662 (R.I. 2001). When interpreting an ordinance this Court applies the same rules of construction that we employ for statutes. *Mongony v. Bevilacqua*, 432 A.2d 661, 663 (R.I. 1981). In interpreting a legislative enactment, it is incumbent upon the Court "to determine and effectuate the Legislature's intent and to attribute to the enactment the meaning most consistent with its policies or obvious purposes." *Brennan v. Kirby*, 529 A.2d 633, 637 (R.I. 1987). "In so doing, '[t]his Court will not construe a statute to reach an absurd result.'" *State v. Flores*, 714 A.2d 581, 583 (R.I. 1998) (quoting *Kaya v. Partington*, 681 A.2d 256, 261 (R.I. 1996)).

## Analysis

### The Trial Justice Did Not Overlook or Misconceive Material Evidence

The defendants contend that at the close of the evidence the trial justice issued a three-page written decision finding them guilty and that, therefore, she overlooked material evidence in the record. However, the record discloses that, after the state rested, the trial justice denied defendants' Rule 29 motion to dismiss in a comprehensive written decision and made extensive findings of fact. As this Court has articulated, when deciding a Rule 29 motion in a criminal bench trial, the trial justice:

> "[A]cts as the factfinder. In that role, when passing upon the motion to dismiss, he or she is required to weigh and evaluate the trial evidence, pass upon the credibility of the trial witnesses, and engage in the inferential process, impartially, not being required to view the inferences in favor of the nonmoving party, and against the moving party. After so doing, if the trial justice in a criminal case setting concludes that the trial evidence is sufficient to establish guilt beyond a reasonable doubt, he or she denies the

defendant's motion to dismiss and, if both sides have rested, enters decision and judgment of conviction thereon. If the evidence is not so sufficient, he or she grants the motion and dismisses the case." *State v. McKone*, 673 A.2d 1068, 1072-73 (R.I. 1996).

When passing on a Rule 29 motion to dismiss, it is incumbent on a trial justice sitting without a jury to determine whether the state has proven the charge beyond a reasonable doubt. Here, the trial justice undertook a thorough analysis of the trial testimony and the objective evidence before her and determined that defendants violated the ordinance beyond a reasonable doubt:

> "[T]he uncontradicted and credible evidence overwhelmingly establishe[d] that raw materials, most pointedly, manure, were trucked in from off-site (no animals were ever observed on site). The intensity of heavy equipment use and the volume of the various materials, which could be utilized [with] the 'compost recipe,' compel the conclusion, beyond a reasonable doubt, that [d]efendant was engaged in the 'manufacturing of compost' in violation of the applicable ordinances."

This Court has consistently held that the factual findings of a trial justice, sitting without a jury, are reviewed with extreme deference. *See Gianquitti*, 22 A.3d at 1165 ("This Court consistently has held that factual findings of a trial justice sitting without a jury are granted an extremely deferential standard of review."); *see also State v. Fuller-Balletta*, 996 A.2d 133, 140 (R.I. 2010) ("We shall not disturb the findings of the trial justice unless it is established that he or she misconceived or overlooked relevant and material evidence or was otherwise clearly wrong." (quoting *Cerilli v. Newport Offshore, Ltd.*, 612 A.2d 35, 39 (R.I. 1992))).

Following the initial Rule 29 ruling, trial continued and the trial justice thereafter issued a second, briefer decision in response to defendants' case. This decision was well-reasoned and addressed the testimony of defendants' expert witness and defendant Pelletier. After a careful review of the record, we decline to disturb the trial justice's factual findings that organic materials were trucked onto defendants' property from off-site, that large industrial, earth-

moving equipment was used to combine these materials to manufacture compost, and that the large quantity of processed compost was in excess of what defendants' one-acre nursery required.

We note that "processing" is also prohibited under Article IV, Section 13(a) of the zoning ordinance. The terms "processing" and "manufacturing" are homologous. "Manufacturing has been defined as 'the production of articles for use from raw or prepared materials by giving the materials new forms, qualities, properties or combination whether by hand labor or machines.'" *Murdock v. City of Norwood*, 67 N.E.2d 867, 869 (Ohio Ct. Com. Pl. 1946) (quoting *American Sumatra Tobacco Corp. v. Tone*, 15 A.2d 80, 82 (Conn. 1940)). On the other hand, "processing" has been defined as "effectuat[ing] change in form, contour, chemical-combination, physical appearance or otherwise by artificial or natural means and, in its more complicated form, involves progressive action in performing, producing or making something." *Corn Products Refining Co. v. Federal Trade Commission*, 144 F.2d 211, 219 (7th Cir. 1944).

It is undisputed that defendants utilized industrial heavy equipment in order to produce the large quantities of compost for their operation. We contrast defendants' actions with that of the average landowner who makes compost in his or her backyard by combining plant waste, food waste, and other organic materials in such a manner that natural fermentation occurs, resulting in a nutrient-rich material that one uses in gardening. Although this Court has not defined the term "composting," other courts have defined composting as the "controlled, biological decomposition of selected solid organic waste materials under aerobic conditions resulting in an innocuous final product." *Organic Technologies Corp. v. State Ex rel Iowa Department of Natural Resources*, 609 N.W.2d 809, 818 (Iowa 2000) (quoting Iowa Admin. Code r. 567-100.2 (455B, 455D)).

The *sine qua non* of distinguishing between defendants' prohibited activities and those of the average homeowner who engages in composting are the elements of manufacturing and processing through the use of industrial equipment and the extent to which defendants manufactured and produced the finished compost in violation of the ordinance. The average composter does not bring heavy, noise-emitting industrial equipment coupled with delivery of truckloads of organic material onto his or her property on a daily basis. Here, it is clear from the evidence in the record that defendants procured truckloads of waste materials to be transported to the property, actively combined these materials with industrial equipment, and produced finished compost that was used off-site.

In reaching our conclusion, we are impressed by the fact that on one site visit in 2010, the Tiverton building and zoning official observed that there was no compost around the base of the trees, yet the amount of compost on the site had been reduced. We also deem persuasive the fact that Mello, defendants' neighbor, saw Mr. Pelletier mixing materials and observed steam emanating from the pile of materials. We also note that Pelletier admitted to the building official that some of the compost was shipped off-site in conjunction with his landscaping business, Tiger Tree Landscaping, stating that "[t]he compost goes off site with the plants."

Conversely, defendants' expert testified that defendants could not be found guilty of violating the zoning ordinance because the compost was not "packaged, shipped, and sold as a product either at wholesale or retail." However, whether or not defendants were selling their compost for profit is immaterial to our analysis in this case. The zoning ordinance at issue here, Article IV, Section 13(a), entitled "Industrial uses," is devoid of a requirement that the manufactured products must be "packaged, shipped, and sold for profit." We need not engage in a lengthy discussion of statutory interpretation, however, because we are of the opinion that the

plain meaning of the terms "manufacturing" and "industrial" do not necessarily involve retail activity. The United States Supreme Court has defined the term "manufacture" as, "transformation—the fashioning of raw materials into a change of form for use. The functions of commerce are different." *Carter v. Carter Coal Co.*, 298 U.S. 238, 299 (1936) (quoting *Kidd v. Pearson*, 128 U.S. 1, 20 (1936)); *see also American Fruit Growers v. Brogdex Co.*, 283 U.S. 1, 11 (1931) ("Manufacture, as well defined by the Century Dictionary, is 'the production of articles for use from raw or prepared materials by giving to these materials new forms, qualities, properties, or combinations, whether by hand labor or by machinery'; also 'anything made for use from raw or prepared materials.'") Similarly, the term "industrial" has been defined as, "of or pertaining to industry or labor; denoting the *processes* or products of manufacture *or* commercial production in general." *In re Ginsburg*, 255 F.2d 358, 362 (3rd Cir. 1958) (emphasis added). Neither the term "manufacture" nor the term "industry" has a requisite element of merchandising.

It is evident from the record that the trial justice carefully weighed the evidence and passed on the credibility of the witnesses. There is nothing in the record before us to suggest that the trial justice misapplied the law, for which there was no precedent,[12] misconceived or overlooked material evidence, or made factual findings that were clearly wrong. *See Lamarque*, 22 A.3d at 1139-40. Additionally, the trial justice carefully considered the evidence and the credibility of Eames, Lombardo, Lawton, Mello, and Pelletier in making her decision. As this Court has stated, "it is the trial justice who has [had] the opportunity to observe the witnesses as they testify and therefore is in a better position to weigh the evidence and to pass upon the

---

[12] The trial justice relied on *Clout, Inc. v. Clinton County Zoning Hearing Board*, 657 A.2d 111, 114 (Pa. Commw. Ct. 1995), which held that composting activity was a prohibited manufacturing use, not a permitted agricultural or accessory use.

credibility of the witnesses than is this [C]ourt[.]" *State v. Rivera*, 987 A.2d 887, 903 (R.I. 2010) (quoting *State v. Luanglath*, 749 A.2d 1, 5-6 (R.I. 2000)). Accordingly, we conclude that the trial justice was not clearly wrong when she found that defendants violated the zoning ordinance beyond a reasonable doubt.

## Accessory Use

The defendants next contend that processing compost on the property is a permitted accessory use because compost is used in the nursery, which is permitted in an R-80 zone. The Tiverton zoning ordinance defines accessory use as:

> "A use of land or of a building, or portion thereof, customarily incidental and subordinate to the principal use of the land or building, and located on the same lot as the principal use. An accessory use shall not be permitted without the principal use to which it is related." Article 11C. (3).

Although we are satisfied that the incidental use of compost in connection with that which is grown in the nursery is an accessory use under Article IV, Section 3(a), the industrial manufacturing of compost is not allowed under Section 13(a) of the ordinance. "[W]hen the language of a statute or a zoning ordinance is clear and certain, there is nothing left for interpretation and the ordinance must be interpreted literally." *Cohen v. Duncan*, 970 A.2d 550, 562 (R.I. 2009) (quoting *Mongony*, 432 A.2d at 663). The ordinance before us unequivocally states that manufacturing, storing, processing, and fabricating activities are prohibited in an R-80 zone. Although operating a nursery is a permitted accessory use under Section 3(a) of the ordinance, the manufacturing, storing, and processing of compost, an activity in which defendants engaged on a large scale, is explicitly prohibited under the ordinance. Accordingly, we hold that manufacturing compost on the property is not a permitted accessory use.

- 13 -

**Constitutional Vagueness**

The defendants also argue that the ordinance is unconstitutionally vague and therefore should be declared void because it does not contain a definition of the terms "manufacturing" or "compost." This argument is not properly before the Court because defendants failed to mount a constitutional-vagueness challenge at trial. *See In re Shy C.*, 126 A.3d at 435 ("[A]n issue that has not been raised and articulated previously at trial is not properly preserved for appellate review." (quoting *Gomez*, 848 A.2d at 237)). Although defendants did assert that the terms "manufacture" and "compost" are not defined in the ordinance at trial, they did not articulate with any specificity a constitutional vagueness claim. *See id.*; *see also Pona*, 66 A.3d at 468.

Nonetheless, we pause to note that, even if the defendants' vagueness argument was properly before the Court, we are satisfied that Section 13(a) of the ordinance is not unduly vague. This Court has held consistently that, when a statute or ordinance is "clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings." *Drs. Pass and Bertherman, Inc. v. Neighborhood Health Plan of Rhode Island*, 31 A.3d 1263, 1269 (R.I. 2011) (quoting *Ryan v. City of Providence*, 11 A.3d 68, 71 (R.I. 2011)). Moreover, "[t]his is particularly true where the Legislature has not defined or qualified the words used within the statute." *Id.* (quoting *D'Amico v. Johnston Partners*, 866 A.2d 1222, 1224 (R.I. 2005)). Here, we agree with the approach adopted by the trial justice that the ordinance should be construed according to the plain and common sense meaning of the terms "manufacture" and "compost." Accordingly, we conclude that the ordinance is not void for vagueness and that the defendants' argument is without merit.

## Conclusion

For the reasons set forth herein, we affirm the judgment of the Superior Court. The papers may be remanded to the Superior Court.

## SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | State ex rel Town of Tiverton v. James Pelletier. <br><br> State ex rel Town of Tiverton v. Melissa Pelletier. <br><br> James Pelletier et al. v. Town of Tiverton. |
| **Case Number** | No. 2014-123-C.A. <br> (N3/09-238A) <br><br> No. 2014-124-C.A. <br> (N3/09-238B) <br><br> No. 2014-298-Appeal. <br> (NC 09-443) |
| **Date Opinion Filed** | December 15, 2017 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ. |
| **Written By** | Associate Justice Maureen McKenna Goldberg |
| **Source of Appeal** | Newport County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice Melanie Wilk Thunberg |
| **Attorny(s) on Appeal** | For Plaintiffs: <br><br> Peter F. Skwirz, Esq. <br> Anthony DeSisto, Esq <br> Andrew M. Teitz, Esq. <br><br> For Defendants: <br><br> Michael A. Kelly, Esq. <br> Jackson C. Parmenter, Esq. |