January 16, 2024

**Supreme Court**

No. 2023-46-Appeal.
(WC 21-219)

Mark Quillen et al.　　　　　　:

v.　　　　　　　　　:

Clint Cox.　　　　　　　　:

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email: opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Mark Quillen et al.          :

v.                                     :

Clint Cox.                         :

Present:  Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

**O P I N I O N**

**Justice Goldberg, for the Court.**  This case came before the Supreme Court on October 26, 2023, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided.  After considering the parties' written and oral submissions, and reviewing the record, we conclude that cause has not been shown and that the appeal may be decided at this time.

The defendant, Clint Cox (defendant or Cox), appeals from a Superior Court judgment entered in favor of plaintiffs Mark Quillen and Dawn Quillen, (collectively, plaintiffs).  In sum, the trial justice determined that "[d]efendant unilaterally and impermissibly breached" a Purchase and Sales Agreement (P & S Agreement) for the property located at 114 Montauk Road in Narragansett, Rhode

- 1 -

Island (the Property). For the reasons set forth herein, we affirm the judgment of the Superior Court.[1]

## I

## Facts and Travel

On or about February 25, 2021, plaintiffs entered into a P & S Agreement with defendant, wherein the parties agreed that defendant would sell the Property to plaintiffs for the total sale price of $632,000, which included a $31,000 deposit. According to the P & S Agreement, plaintiffs were required to deliver an initial deposit of $5,000, which was to be "paid and delivered to the [e]scrow [a]gent," Beycome Brokerage Realty (Beycome); and the remaining $26,000 deposit was to be tendered in the same manner "on or before [February 26, 2021]."

The P & S Agreement further detailed that the transaction would close on April 30, 2021, at 10:00 a.m. "or at such other time and place as may be agreed to by [plaintiffs] and [defendant]." The P & S Agreement also memorialized the

---

[1] After hearing testimony from various witnesses, on June 2 and June 6, 2022, the trial justice granted plaintiffs' request for a preliminary injunction, which "restrained and enjoined [defendant] from selling, conveying, obtaining any offers to convey, and/or conveying any marketable title to the [P]roperty until the resolution of this matter [was] decided * * *." Thereafter, on August 16, 2022, the same trial justice heard the merits of plaintiffs' claims during a one-day bench trial. The trial justice's November 29, 2022 decision noted that "[t]he parties agreed to 'consolidate' the evidence produced at the [p]reliminary [i]njunction [h]earing with the [t]rial evidence and testimony," resulting in a final judgment. Accordingly, we reference evidence adduced during both the preliminary-injunction hearing and the one-day bench trial.

parties' agreement that there was no financing contingency and that, in fact, plaintiffs would pay cash for the Property.

According to Mr. Quillen's testimony at the preliminary-injunction hearing, plaintiffs attempted to tender the initial $5,000 deposit to Beycome when Gianna Quillen (Gianna)[2]—plaintiffs' daughter and real estate broker—advised Mr. Quillen that Beycome would not accept the "escrow payment." The defendant's real estate attorney, Daniel Carter (Attorney Carter), also testified that after he spoke with a gentleman at Beycome, he learned that Beycome was engaged only for purposes of listing the Property.

Because Beycome refused to accept plaintiffs' deposit, the parties agreed to draft and sign an amendment to the deposit provision of the P & S Agreement. Pursuant to the amendment, plaintiffs would submit one payment of $31,000, payable to Trusthill Real Estate Brokerage (Trusthill), the brokerage firm that employed Gianna, rather than require plaintiffs to submit two payments totaling $31,000. The amendment to the P & S Agreement is illegible; however, the record demonstrated that Beycome rejected plaintiffs' $5,000 initial deposit. Counsel for plaintiffs clarified to the court that the $5,000 deposit could not be effectuated, and an amendment was drafted and signed by the parties on or about April 12 and April

---

[2] We refer to plaintiffs' daughter by her first name as to not confuse her with plaintiff, Mrs. Quillen. We intend no disrespect.

15, 2021. The trial justice clarified and affirmed her understanding on the record that "both parties agree that the buyer has forwarded one deposit check in the amount of $31,000."

Attorney Carter testified that, approximately ten days prior to the closing, he received a telephone call from Gianna inquiring whether he wanted to take possession of the $31,000 deposit. Attorney Carter declined Gianna's delivery of the deposit because the closing would take place in ten days, and he suggested to Gianna that she keep the deposit funds in her own firm's brokerage account, Trusthill. The defendant now contests plaintiffs' delivery of the consolidated check of the $31,000 deposit in this appeal, among other contentions.

The plaintiffs' real estate attorney, John J. Bevilacqua Jr. (Attorney Bevilacqua), testified that in advance of the April 30, 2021 closing, plaintiffs "wired[] personal funds to [the] escrow account * * *." On April 28, 2021, Attorney Bevilacqua received the first wire transfer in the amount of $115,000, and, on the following day, April 29, 2021, he received a second wire transfer in the amount of $500,000 from Northeast Equity Partners for the purchase price. Attorney Bevilacqua further confirmed that there were "sufficient funds to effectuate the closing" and that "it was actually a nice surprise because normally [parties] scrambl[e] the day of closing to make sure funds hit escrow accounts." Despite the transfer of sufficient funds, the closing did not take place on the morning of April

- 4 -

30, 2021, as required by the P & S Agreement. When questioned during trial, Attorney Bevilacqua and Attorney Carter[3] both testified that an outstanding $700 water bill caused the delay in closing on the Property. Attorney Carter explained that "all the ducks [were] in a row, everything was a go, and then 11:30 in the morning, on April 30th, we [received] the e-mail from [Cox,] saying, stop the presses, I'm not closing until * * * the water bill gets resolved. That's when it blew up."

Mr. Quillen testified that he was advised that the closing was postponed and scheduled for the upcoming Monday, May 3, 2021. Likewise, Attorney Bevilacqua testified that he told plaintiffs "to hold off until * * * Monday [May 3, 2021]." Meanwhile, according to Cox, he contacted Attorney Bevilacqua's office again at approximately 1:28 p.m., informing plaintiffs that the water bill issue was resolved—because he apparently paid the outstanding bill himself—and that the closing was to go forward. By this time however, Attorney Bevilacqua testified that plaintiffs—who were already in Florida and driving to Attorney Anthony Gallone's office that was located ninety minutes away—were informed that the closing was postponed for three days and decided to turn around and drive home. Although

_____

[3] It is unclear when Attorney Carter began to represent defendant; however, the record is clear that, by the time the amendment was signed in April 2021, Attorney Carter and Cox had an attorney-client relationship. The record is also unclear when Cox conferred power of attorney to Attorney Carter; nonetheless, Cox's testimony confirmed that he granted Attorney Carter such authority for the sale of the Property.

Attorney Carter and Attorney Bevilacqua had agreed to postpone the closing to Monday, May 3, 2021, Cox testified that he contacted Gianna on Saturday, May 1, 2021, and advised Gianna that the deal was dead.

Attorney Bevilacqua maintained that "[a]t all times," plaintiffs were "ready, willing, and able to purchase the property[.]"  Attorney Carter likewise testified that "[the closing] was teed up and ready to go until [defendant] pulled the plug on" April 30, 2021—the closing date.  The Property never closed, and Cox eventually removed the Property from the open market.

The plaintiffs initiated suit on May 5, 2021, by filing a three count complaint, which identified count 1 as "Specific Performance"; count 2 as "Breach of Contract"; and count 3 as "Restraining Order/Injunctive Relief."[4]  On July 29, 2021, defendant filed an answer and a two-count counterclaim, which identified causes of action for breach of contract and declaratory judgment.[5]

On June 2, 2022, and June 6, 2022, the trial justice heard plaintiffs' claim for preliminary injunctive relief pursuant to Rule 65 of the Superior Court Rules of Civil

---

[4]  Although plaintiffs' complaint includes claims for specific performance (count 1) and a restraining order/injunctive relief (count 3), these counts seek remedies.

[5]  Because of defendant's failure to respond in a timely manner, plaintiffs moved for entry of default pursuant to Rule 55 of the Superior Court Rules of Civil Procedure. According to the docket, default was entered on June 14, 2021.  On August 2, 2021, a Superior Court justice—who did not preside over the preliminary injunction or the bench trial—entered an order vacating the default that was entered on June 14, 2021. This issue was not raised by either party; nor is it before the Court.

Procedure.  The trial justice granted plaintiffs' motion for a preliminary injunction, concluding that:

> "The likelihood of success on the merits has been established.  The irreparable harm would [have been] the alienation or conveyance of a unique asset, and the balance of equities clearly favor[ed] the [p]laintiffs in the circumstances and evidence of this case.
>
> "The preliminary injunction preserves the status quo and there is no harm nor is there any prejudice to the [d]efendant, who continue[d] to own the property and collect and retain income, an income stream from the rental of said property."

On August 16, 2022, plaintiffs' claims were heard on the merits during a one-day bench trial; and, on November 29, 2022, the trial justice issued a written decision, finding that based on the "abundance of credible evidence, in addition to documentary evidence," plaintiffs had "exceeded their evidentiary burden of proof for sustaining the claims upon which they [sought] relief."  The trial justice further noted that defendant "unilaterally and impermissibly breached the P & S Agreement" and that plaintiffs were "unequivocally, entitled to specific performance of the P & S Agreement having satisfied, in a timely fashion, all of their obligations pursuant to the contract."

On January 19, 2023, the Superior Court entered judgment ordering specific performance, thereby directing defendant to convey and transfer the Property to plaintiffs within thirty (30) days of the date of judgment.  The trial justice also

dismissed Cox's counterclaims for breach of contract, declaratory judgment, and damages. Following the entry of judgment, this timely appeal ensued.

## II

## Standard of Review

"A judgment in a nonjury case will be reversed on appeal when it can be shown that the trial justice misapplied the law, misconceived or overlooked material evidence or made factual findings that were clearly wrong." *Boisse v. Miller*, 267 A.3d 634, 636 (R.I. 2022) (quoting *Lamarque v. Centreville Savings Bank*, 22 A.3d 1136, 1139-40 (R.I. 2011)). "Upon review, we accord the factual findings of a trial justice sitting without a jury great deference and consider questions of law *de novo*." *Id.* (brackets omitted) (quoting *Lamarque*, 22 A.3d at 1140).

"Specific performance is available as a remedy for breach of a real estate agreement when the essential contractual provisions are clear, definite, certain, and complete." *Bennett v. Steliga*, 300 A.3d 558, 572 (R.I. 2023) (quoting *Terrapin Development, LLC v. Irene M. O'Malley Revocable Trust*, 253 A.3d 1241, 1246 (R.I. 2021)). "In the absence of a legitimate and articulable equitable defense, specific performance is an available remedy when a purchaser of real estate under a written contract demonstrates that he or she was at all times ready and willing to perform the contract." *Id.* at 572 (quoting *Bucklin v. Morelli*, 912 A.2d 931, 936 (R.I. 2007)).

"The remedy of specific performance is not available 'as a matter of right[,]' but rather 'rests within the sound discretion of the [hearing] justice.'" *Bennett*, 300 A.3d at 572 (quoting *Fisher v. Applebaum*, 947 A.2d 248, 251 (R.I. 2008)). "[T]his Court will not disturb a [hearing] justice's ruling on a specific performance claim unless the appellant demonstrates an abuse of discretion or error of law on the part of the [hearing] justice." *Id.* (quoting *Lajayi v. Fafiyebi*, 860 A.2d 680, 686 (R.I. 2004)). "That said, '[t]hough we are mindful that our review is a deferential one, it cannot be equated with no review at all.'" *Id.* (quoting *Sloat v. City of Newport ex rel. Sitrin*, 19 A.3d 1217, 1224 (R.I. 2011)).

### III

### Analysis

Before this Court, defendant identifies four grounds for appeal. However, because we deem defendant's second and third arguments as overlapping, we consolidate them for review. First, Cox asserts that the trial justice erred in finding that plaintiffs satisfied the deposit requirement under the P & S Agreement, and, thus, he contends they were in breach of the contract. Second, Cox argues that the trial justice failed to find by clear and convincing evidence that plaintiffs were ready, willing, and able to purchase the Property, and, therefore, she erred in ordering specific performance. Lastly, Cox contends that the trial justice erroneously failed

to award him the deposit amount as damages for plaintiffs' breach of the P & S Agreement.

This Court has held that it is "both elementary as well as fundamental contract law that if one party to the contract prevents the happening or performance of a condition precedent that is part of the contract, that action eliminates the condition precedent." *Bradford Dyeing Association, Inc. v. J. Stog Tech GmbH*, 765 A.2d 1226, 1237-38 (R.I. 2001). In *Bradford*, we explained, "[a] party 'cannot escape liability by preventing the happening of the condition on which it was promised.'" *Id.* at 1238 (quoting 8 *Corbin on Contracts*, § 40.17 at 580-81 (Perillo rev. ed. 1999)).

Turning to the first issue, Cox argues that the trial justice "overlook[ed] and misconceiv[ed] material evidence in finding that [plaintiffs] gave [defendant] a deposit." Cox contends that plaintiffs' breach of the deposit provisions of the P & S Agreement renders the contract unenforceable. Based upon our review of the record, we conclude that the trial justice correctly determined that plaintiffs timely and properly delivered the $31,000 deposit pursuant to the amendment.

As this Court held in *Bradford*, "[a] party 'cannot escape liability by preventing the happening of the condition on which it was promised'"; thus, defendant's actions—requiring that the deposit be made to a brokerage firm that would not accept the deposit—prevented plaintiffs from effectuating delivery of the

$31,000 deposit. *See Bradford Dyeing Association, Inc.*, 765 A.2d at 1238 (quoting 8 *Corbin on Contracts*, § 40.17 at 580-81). According to the original agreement, plaintiffs were required to tender a $5,000 deposit to Beycome and thereafter deliver the remaining $26,000 deposit to Beycome on or before February 26, 2021. Unbeknownst to plaintiffs, the record reveals that Beycome would not accept escrow payments, and therefore, plaintiffs were unable to deliver the deposit in accordance with the P & S Agreement. Moreover, by virtue of the attorney-client relationship, Attorney Carter was also bestowed with the authority to make real estate decisions to effectuate the closing. This clear authority was further confirmed when Cox executed a power of attorney, thereby affirming Attorney Carter's authority to act on behalf of Cox to make decisions to effectuate the closing of the Property. For instance, it was Attorney Carter's decision that Gianna maintain the funds in Trusthill's account because the closing was to be held in ten days.

Cox also argues that the trial justice erroneously found that plaintiffs satisfied the clear and convincing standard and, therefore, the decision granting specific performance was erroneous. We note that our review of the trial justice's decision granting plaintiffs' request for specific performance pursuant to the P & S Agreement is afforded great deference. *See Thompson v. McCann*, 762 A.2d 432, 436 (R.I. 2000) ("The grant of a request for specific performance is not a matter of right but rests within the sound discretion of the trial justice.") (quoting *Eastern*

- 11 -

*Motor Inns, Inc. v. Ricci*, 565 A.2d 1265, 1269 (R.I. 1989)). Accordingly, for the reasons discussed herein, we are of the opinion that defendant's arguments are without merit.

The trial justice determined that there was sufficient competent evidence demonstrating that plaintiffs were ready, willing, and able to purchase the Property. The trial justice referenced Attorney Bevilacqua's credible testimony that plaintiffs were in fact "actually very anxious to purchase the property" and that they never took any action to impede the closing as scheduled. The trial justice further observed that based on Mr. Quillen's testimony, plaintiffs were "not only ready, willing, and able to close this transaction, they [were] excited to do so, they [were] eager to do so, they [were] enthusiastic to acquire the property * * * and that they were looking forward to celebrating the closing and the acquisition of the 114 Montauk property[.]" Moreover, in granting the preliminary injunction, the trial justice declared that there was nothing to suggest that the deposit funds were in jeopardy despite sitting in escrow with Trusthill, plaintiffs' own brokerage account firm. Finally, the trial justice found that defendant's text message, in which he told Gianna the deal was dead and that the "buyer forfeits the deposit and the house goes back on the market[,]" supports that Cox was, in fact, aware that he had "very willing, very ready, and very able buyers for the subject property."

- 12 -

Furthermore, Cox testified that when Attorney Carter informed him that the closing was rescheduled to the following Monday, he objected to delay the closing and further stated that he "did not feel comfortable about the transaction anymore because [he] didn't feel that [plaintiffs] had the cash." However, the trial justice noted in her written decision that she did not find Cox's statement—that he believed plaintiffs no longer had the funds for the transaction—to be credible and that his statement could not be "accorded any credence and [was] contrary to all other evidence pertaining to t[he] issue[.]" The trial justice found that plaintiffs were "unequivocally, entitled to specific performance of the P & S Agreement[,] having satisfied, in a timely fashion, all of their obligations pursuant to the contract."

As to Cox's contention that the trial justice erred in failing to apply the clear and convincing standard in making her factual findings, Cox failed to raise this issue in the lower court. "[A]ccording to this Court's longstanding raise-or-waive rule, a litigant cannot raise an objection or advance a new theory on appeal if it was not raised before the trial court." *Boisse*, 267 A.3d at 636 (quoting *Cusick v. Cusick*, 210 A.3d 1199, 1203 (R.I. 2019)).

Assuming *arguendo* that Cox had preserved this issue, however, we are satisfied that the trial justice accurately addressed the burden of proof when she emphasized that plaintiffs "exceeded their evidentiary burden of proof for sustaining the claims upon which they [sought] relief."

- 13 -

The record before us reveals ample facts that support the trial justice's decision. In reaching this conclusion, we accord great deference to the trial justice's findings and her decision to grant plaintiffs specific performance of the P & S Agreement. *See Thompson*, 762 A.2d at 436. Our review of the record comports with the conclusion that plaintiffs satisfied their burden by clear and convincing evidence.

With respect to Cox's final argument that it was "clear and prejudicial error" for the trial justice to deny him the $31,000 deposit as damages, Cox asserts it was, in fact, the plaintiffs who were not "ready, willing, and able" to close as demonstrated by the issues raised in this appeal. Therefore, Cox argues, these facts demonstrate that the plaintiffs breached the P & S Agreement. Notwithstanding the raise-or-waive issue, for the reasons already set forth herein, we conclude that the defendant was not entitled to damages.

**IV**

**Conclusion**

For the reasons set forth herein, we affirm the judgment of the Superior Court. The record in this case is remanded to the Superior Court.

# STATE OF RHODE ISLAND

## SUPREME COURT – CLERK'S OFFICE
Licht Judicial Complex
250 Benefit Street
Providence, RI  02903



## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Mark Quillen et al. v. Clint Cox. |
| **Case Number** | No. 2023-46-Appeal. (WC 21-219) |
| **Date Opinion Filed** | January 16, 2024 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Associate Justice Maureen McKenna Goldberg |
| **Source of Appeal** | Washington County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Melanie Wilk Thunberg |
| **Attorney(s) on Appeal** | For Plaintiffs: Gregory J. Acciardo, Esq. |
| | For Defendant: Stephen A. Izzi, Esq. |